UNITED STATES of America

v.

Harvey R. McCLINNHAN, Appellant.

No. 80–1686.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 13, 1981.

Decided July 9, 1981.

Jay E. Shanklin, Washington, D. C. (appointed by this Court), for appellant.

Charles F. C. Ruff, U. S. Atty., Washington, D. C., with whom Darryl W. Jackson, John A. Terry and H. Lowell Brown, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before McGOWAN and WALD, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

Appellant Harvey McClinnhan challenges the District Court's denial of a pretrial motion to suppress evidence garnered in a warrantless search of his briefcase that occurred during an investigative stop. Although appellant raises nonfrivolous Fourth Amendment arguments for the invalidity of the stop and the accompanying search, we are persuaded that both were reasonable in the particular circumstances of this case and therefore affirm the District Court.

## I

The material facts are not in dispute. On the evening of October 3, 1978, Officers Joseph Bryant and Clinton Bement of the District of Columbia Metropolitan Police, while driving in their patrol car, received a police radio report of a man walking south near 16th and Crescent Streets, N.W. The transcript of that report, which was received by the police from an anonymous telephone caller, described a black man wearing jeans, a black coat, and a black hat, carrying a sawed-off shotgun concealed in a black briefcase. Less than one minute later, the police officers reached the area and observed a man matching the description

precisely, who was standing less than one foot from a black briefcase. The man was appellant.

The officers stopped their car near the appellant. Officer Bryant asked him to identify himself and conducted a weapons frisk. At the same time Officer Bement seized the briefcase, walked two to three feet away, and then opened it. Inside he found a loaded sawed-off shotgun, and two identifying papers. Upon discovering the concealed weapon, the officers placed appellant under arrest.

A three-count indictment against appellant was filed on March 25, 1980. He was charged with possession of an unregistered firearm, 26 U.S.C. §§ 5861(d), 5871 (1976); possession of a firearm by a convicted felon, 18 U.S.C. App. § 1202(a)(1) (1976); and bail jumping, 18 U.S.C. § 3150 (1976). The defendant, on May 2, 1980, moved to suppress the introduction into evidence of the briefcase, shotgun, and papers, arguing that the police lacked a reasonably-founded suspicion for the investigative detention, and that there were no exigent circumstances allowing the police to conduct a warrantless search of the briefcase. On May 2, 1980, the District Court held an evidentiary hearing at which Officer Bement was the sole witness, and, one week later the District Court, in a memorandum opinion, denied the motion to suppress.

Appellant pleaded guilty to the bail-jumping charge on May 16, 1980, and agreed to a trial to the court of the firearms charges on the basis of stipulated evidence. The District Court, after accepting the stipulation, found appellant guilty of both charges. Appellant was sentenced to one to four years' imprisonment for possession of an unregistered firearm, six months' to two years' imprisonment for firearm possession following a felony conviction, and six months' to two years' imprisonment for jumping bail. While the two firearms sentences were to run concurrently, the bail-jumping sentence was to run consecutively

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a)

to them. McClinnhan then filed a notice of appeal.[1]

## II

On appeal, McClinnhan renews his attack on the constitutionality of the investigative stop and the warrantless briefcase search. We have little difficulty in concluding that the stop was justified by the anonymous tip verified by the officers' pre-stop observations, and, although the question is somewhat closer, reach the conclusion that the police acted reasonably to protect their safety by opening the briefcase to check for weapons.

### A. The Investigative Detention and Weapons Frisk

Appellant's Fourth Amendment challenge to the stop-and-frisk is based upon his characterization of the anonymous tip as lacking sufficient indicia of reliability to justify the intrusion upon personal privacy attendant upon an investigative stop and accompanying weapons frisk. This court has, however, held recently that in certain circumstances an investigative detention of the variety found constitutional in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), could properly be based upon an anonymous tip, if the officers had legitimate reasons to believe that the tip was reliable. *United States v. White*, 648 F.2d 29 (D.C.Cir. 1981), *petition for cert. filed*, No. 80–6704 (May 20, 1981).

The *White* case concerned an investigative stop triggered by an anonymous telephone tip informing police that a young man wearing a blue jumpsuit had entered a 1974 Oldsmobile in front of a particular address and would be carrying drugs upon his return. *Id.* at 30. When the police staked out the address, they spied a 1974 Oldsmobile being driven by a young man in a blue sweatsuit. *Id.* at 30–31. The *White* court wrote:

Based on the particular facts of this case, we conclude that an anonymous tip about an ongoing transaction, detailed as to time and place, including a specific description of the participants and their vehicles as well as their modus operandi, and verified by the officers through surveillance in all details except for the actual possession or exchange of narcotics provides a sufficient basis for a legitimate *Terry* stop to question the occupants as to their identity and visually check inside the car.

*Id.* at 43.

■ We think that the officers' suspicions about McClinnhan were similarly reasonable, because they were based on an anonymous tip that, while lacking facial indicia of reliability, was corroborated in every significant detail by their pre-stop surveillance. While the corroborated tip may not have supplied probable cause for an arrest, it need only be mentioned that the level of suspicion required for a valid investigative detention does not rise to the level requisite for an arrest. *See Terry v. Ohio*, 392 U.S. 1, 15–16, 88 S.Ct. 1868, 1876–77, 20 L.Ed.2d 889 (1968).

We are mindful that the investigative stop is a significant intrusion into personal privacy, and that it is possible for anyone with a grudge to fabricate a tip whose neutral details, such as clothing or location, would provide the corroboration required by the *White* decision for a stop. But the *White* court was ultimately persuaded that the police had no alternative to an investigative detention except to "sit, wait, and hope they will see from afar some suspicious conduct. . . ." *Id.* at 45.

■ We think that Officers Bryant and Bement were confronted with the same unappealing choice. Either they stopped McClinnhan on the basis of the tip as corroborated by their observation or they could at best follow him through the streets of

---

1. After the notice of appeal was filed, the District Court apparently modified appellant's sentence by increasing the length of incarceration on the firearms charges. The United States Attorney now concedes that the purported modification was void because it occurred after the filing. We do not understand the disposition of this appeal to affect the sentencing question.

Washington hoping he would commit a crime, or at least brandish the weapon, out of doors, rather than walking inside a dwelling, and thus beyond police purview, before putting the shotgun to its intended use. Either they ignored their reasonable suspicion, or they took some action. We think that where their suspicion has some objective foundation, the Fourth Amendment does not, particularly where the reported contraband is a weapon as lethal as a sawed-off shotgun, require a police officer to ignore his well-founded doubts and accordingly will permit an investigative detention.

█ The tip also stated that McClinnhan was carrying a concealed weapon. Although that aspect of the tip was inherently impossible to verify by observation alone, we think that the corroborative detail noted by the officers allowed them to form the reasonable suspicion that McClinnhan was armed, and therefore to conduct a weapons search. The rule for weapons frisks pursuant to a *Terry* stop was articulated in *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (footnote omitted): "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope" to protect the officers or others present.

Again, to deny the officers the right to frisk for weapons in this situation would present them with a dangerous alternative: to question a suspect reported to be armed by a tipster whose information has in other respects been verified while fearing that individual could well have transferred the sawed-off shotgun to his coat, or that he could remove it from his briefcase at any moment. When their suspicion is reasonable, the police should not be subjected to

this degree of risk. Thus, Officer Bryant's frisk of McClinnhan was reasonable and constitutional: Officer Bement's simultaneous warrantless search of the briefcase implicates other Fourth Amendment issues requiring separate discussion.

**B.** *The Warrantless Search of McClinnhan's Briefcase*

█ In deciding whether the police could search appellant's briefcase without a warrant, we take as our point of departure the principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). Recently, this court, sitting *en banc*, said that *Katz* required judicial adherence to "the Court's command that the police obtain a warrant unless their search falls within one of the express and narrowly drawn exceptions to the warrant requirement." *United States v. Ross*, 655 F.2d 1159, at 1164 (D.C.Cir. 1981) (*en banc*).

The only exception that could justify dispensing with the Fourth Amendment's warrant requirement in this situation is the doctrine of exigent circumstances. When the exigency is the immediate protection of the investigating officers from possible assault, or the broader danger to the community of permitting one assertedly possessed of a sawed-off shotgun to proceed on his way unhindered,[2] this court has in the past allowed warrantless searches for concealed weapons based on less than probable cause. In *United States v. Wilkerson*, 598 F.2d 621 (D.C.Cir.1978), this court refused to suppress as evidence a sawed-off shotgun found by an officer in the warrantless

---

**2.** The danger of allowing McClinnhan to proceed is illustrated by Officer Bement's testimony at the suppression hearing. The police officer said that, after his arrest, appellant exclaimed, "Man, I am going to kill that n_ _ _ _ _ that shot my brother. Man, that is my gun. I am going to get him. S_ _ _, I am going to kill him." Hearing Transcript at 15. Of course,

the appellant's statement is not relevant to the determination that the officers had a reasonable suspicion to justify the weapons search, *see Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968), but it does demonstrate, as a general matter, the dangers inherent in not allowing such searches in these circumstances.

search of a coat lying on the seat of the car he had stopped.

The court emphasized that the police must have the ability to protect themselves by conducting weapons searches on reasonable suspicion in the course of an investigative stop:

> It takes little imagination to realize that an armed suspect might hide his weapon in a car before getting out in response to a police order. Thereafter standing next to the car without handcuffs, either the driver or one of the passengers could have bolted to it, seized a weapon and fired before the officers could find cover. The record shows that as soon as the occupants were out of the car, the officer saw a jacket in plain view on the front seat. There is no evidence that the appellant closed the door when he stepped out of [the car]. The jacket appeared to be wrapped around something. In the context of all else the officer then knew, this was suspicious in itself and, objectively viewed, would "warrant a man of reasonable caution in the belief" that it should be checked to determine whether the jacket covered a weapon.

*Id.* at 625. Similarly here "it takes little imagination" to suppose that, following or in the course of Officer Bryant's patdown of appellant, the latter might well have gone for the weapon at his feet, resulting at the least in a dangerous scuffle for access to the weapon. For all practical considerations, Officer Bement's action in seizing the briefcase simultaneously and gaining control himself of the sawed-off shotgun can be legitimately regarded as a part of the total *Terry* weapons search justified in these particular circumstances.

It might be noted that the instant case is both a better and a worse candidate for applying the exigent circumstances exception than *Wilkerson.* It is worse because in *Wilkerson* the officers had personally observed suspicious behavior, whereas the officers in this case saw only details innocent in themselves. Yet in one vital respect, this case presents a more compelling justifica-

tion for upholding a warrantless weapons search than does *Wilkerson* because in this case the officers were informed that the suspect was armed, and the reliability of the tipster's other information had been confirmed by personal observation. In *Wilkerson,* the officer suspected the occupants of the car might be armed only from indications that they might be engaged in other criminal activity, and from the coat itself lying on the front seat.

Before holding the warrantless search of the coat legitimate, the *Wilkerson* court examined the alternatives open to the police in that situation and concluded that "each alternative course would have exposed [the officers] to danger which was eliminated when [one of them] reached into the front seat and patted the coat left lying there." *Id.* We think that general discussions of personal privacy and public safety are not as useful in resolving close Fourth Amendment questions as is following the example of the *Wilkerson* court by focusing upon the options available to the investigating officer confronted with a reasonable apprehension of danger.

We think that Officers Bryant and Bement had no suitable or safe alternative to a warrantless search of McClinnhan's briefcase. They could do nothing at all, a course whose risks are obvious. They could have asked McClinnhan to open his briefcase, but had he refused, they would have been no better off than before. Merely separating McClinnhan from his briefcase, as the officers did just before the search, would obviate the danger only for the length of the stop; at some point they would be compelled to return the briefcase to appellant and thus place themselves in the danger they sought to avoid.

Appellant himself argues that the proper course for the police to follow was to seize the briefcase and obtain at some later time a search warrant for its inspection. This alternative does not commend itself to us for at least two reasons. At the outset, it depends upon the doubtful proposition that a seizure of one's personal belongings for an indefinite period of time without a warrant

or an arrest is a lesser intrusion upon personal privacy than is a warrantless inspection. In an automobile-exception case, the Supreme Court considered and rejected the argument that while a warrantless seizure may pass constitutional muster, a search does not. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Comparing search and seizure, the Court said "which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend upon a variety of circumstances." *Id.* at 51–52, 90 S.Ct. at 1981, *quoted in United States v. Hawkins*, 595 F.2d 751, 753 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979).

Also speculative is the notion that the investigating officers could have obtained a search warrant for the briefcase. The investigation of McClinnhan had apparently developed nothing beyond what the officers were told by the tipster. We cannot say with any assurance that the anonymous tip constituted probable cause that would support a search warrant under the tests of *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). If it did not, then the officers would once again be forced to return the briefcase to McClinnhan, leading to a recrudescence of the original danger.

Appellant argues that the Supreme Court has twice held warrantless luggage searches unconstitutional because the police could merely have seized the container instead. *See Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *Sanders* and *Chadwick* differ from the instant case in one crucial regard: in those cases, the suspect was legally arrested, thus curing the exigency that supports the warrantless search of appellant's briefcase.

The *Chadwick* court noted that the warrantless search at issue had been "conducted more than an hour after federal agents gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed ... as justified by any ... exigen-cy." *Id.* at 15, 97 S.Ct. at 2485–86. In *Sanders*, the suspect had once again been taken into legal custody, leading the state to concede that "there were no special exigencies." *Arkansas v. Sanders*, 442 U.S. 753, 763–64 n.11, 99 S.Ct. 2586, 2593 n.11, 61 L.Ed.2d 235 (1979). *Chadwick* and *Sanders* are doubly distinguishable because the police in those cases were searching for drugs, not contraband weapons. Therefore, it cannot be argued persuasively that these cases require police officers who reasonably suspect the object of their inquiry to be armed, but lack probable cause for an arrest, to forbear from undertaking a warrantless search limited to readily accessible weapons.

We are aware that, in countenancing a warrantless search incident to an investigative stop, we are near the limits of the exigent circumstances exception. But we think we are well within it and that we need not reach factually dissimilar cases perhaps lying closer to the borderline. We are not upholding today a warrantless search for anything other than an immediately-accessible dangerous weapon which, because of its nature as earlier reported to the police, could under no circumstances have a legal existence. We are not considering a warrantless search based upon an anonymous tip that is not corroborated in some manner or which appellant argues was fabricated. Nor are we endorsing any diminution of the *Sanders-Chadwick* approach to warrantless searches following an arrest.

We think that Officers Bryant and Bement, reasonably suspecting that appellant was armed, had no prudent alternative on the evening of October 3, 1978, other than to search immediately McClinnhan's briefcase, where they reasonably thought that the weapon might be found.

For the foregoing reasons, we affirm the convictions of appellant McClinnhan on Counts I and II of the indictment.

*It is so ordered.*