The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

John Stevens DAVIS, Defendant-Appellee.

No. 83SA17.

Supreme Court of Colorado.

Sept. 12, 1983.

Alexander M. Hunter, Dist. Atty., Peter M. Maguire, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Denver, Peter Schild, Deputy State Public Defender, Boulder, for defendant-appellee.

ROVIRA, Justice.

This interlocutory appeal brought by the People presents the question of whether

information obtained from an anonymous tip can form the basis for an affidavit used to obtain an order for nontestimonial identification pursuant to Crim.P. 41.1. The trial court held that it could not. We reverse.

## I.

The affidavit prepared by David Hayes, an officer of the Boulder Police Department, to secure the order for nontestimonial identification disclosed that on June 10, 1982, at approximately 12:30 a.m., Lauri Westerlind was approached by two men in the parking lot behind her apartment. The first man, described as a black male, 5' 10", stocky build, in his late 20's or 30's, and wearing a red ski mask, forced her at gun point to get back in her car. The second man, described as a white male, 5' 7", thin build, in his 20's, having a deep voice with a southern drawl, and wearing light colored hiking boots, a plain flannel shirt, and gloves, then entered the car.

For the next two and a half hours Westerlind was driven around by the two men. She was ordered not to look at their faces, but she heard them talking. During this time they threatened to kill or rape her. After they found her VISA card, at approximately 3:00 a.m., the men drove to the Arapahoe National Bank where they forced Westerlind to try to obtain money from the automated banking machine. She was not able to do so.

At about the same time, Dennis Batchelor stopped at the Arapahoe National Bank's automated banking machine and attempted to withdraw some money. He noticed another car in the parking lot driven by a black male. He was approached by a white male who he described as 5' 9" to 5' 10", medium build, blond hair, brown eyes, about 26 to 28 years old, with a deep New York accent, wearing tennis shoes, blue jeans, a red and white flannel shirt, a red ski cap, and a red scarf. The man at gun point attempted to rob Batchelor and then told him to "Get back in your car and get the hell out of here, go, go, go."

Westerlind reported to the police that during the time they were in the Arapahoe National Bank parking lot the white male left the car. On his return he told his companion that, "He didn't believe me until I said I would pull the trigger, but he had insufficient funds."

After driving around for another two hours and repeatedly asking Westerlind what she would do when and if they released her, the men stopped at a gas station around 5:00 a.m. They ordered Westerlind to go into the station and charge the purchase of gas. She enlisted the aid of the attendant who called the police. The men became suspicious and fled in Westerlind's car.

Some thirteen hours later the Police Communications Center received an anonymous telephone call which was taped.[1] The caller identified John Davis as a likely participant in this robbery and kidnapping. Officer Hayes listened to the tape recording and recalled that in March 1982 he had talked with Davis, who lived at the corner of 4th and Canyon, about a fire that Hayes was investigating. He also remembered that Davis resided with his mother. Hayes

1. "COMMUNICATIONS OPERATOR: Boulder Communications.
INFORMANT: Yeah, what I want to do is on that robbery that happened the other night—
COMMUNICATIONS OPERATOR: Uh-huh.
INFORMANT: —where that girl was robbed and abducted?
COMMUNICATIONS OPERATOR: Uh-huh...
INFORMANT: I think the Sheriff's Department's best bet is to check out John Davis.
COMMUNICATIONS OPERATOR: John Davis?
INFORMANT: Yeah, his mother lives at 4th and Canyon, and the colored guy he's been running around with.

COMMUNICATIONS OPERATOR: Okay, and who is this?
INFORMANT: I don't want to say anything.
COMMUNICATIONS OPERATOR: Okay.
INFORMANT: But that's a real good bet.
COMMUNICATIONS OPERATOR: Okay, do you have any other information that might be helpful?
INFORMANT: No. I just kind of overheard him talking about pulling some robberies.
COMMUNICATIONS OPERATOR: Okay, I'll pass it on to our detectives.
INFORMANT: Okay.
COMMUNICATIONS OPERATOR: Okay, bye-bye."

checked the records of the Boulder Police Department and found that Davis was a white male, 5′ 6″, 155 pounds, green eyes, brown hair, 28 years of age, and lived at 1920 4th Street (corner of 4th and Canyon in Boulder).

Based on the information received from Westerlind and Batchelor, the anonymous tipster, and the information garnered from the police records, all of which was contained in the affidavit, Hayes sought and obtained from a county judge an order for nontestimonial identification pursuant to Crim.P. 41.1. The order required Davis to give voice samples, a photograph, and fingerprints.

The order for nontestimonial identification stated there was probable cause to believe that the crimes of second-degree kidnapping and aggravated robbery had been committed, there were reasonable grounds to suspect Davis committed the offense, and the results of the nontestimonial identification procedures would be of material aid in determining whether Davis committed the offenses.

After the order was executed, the voice samples given by Davis were placed in a voice lineup with five other voices. Westerlind heard the voice lineup and identified Davis' voice. Based on that evidence, a warrant was issued for Davis' arrest. He was subsequently charged with second-degree kidnapping, aggravated robbery, attempted aggravated robbery, and crime of violence.

Davis moved to suppress the nontestimonial identification on the basis that there were insufficient grounds for the issuance of the order. Crim.P. 41.1(i). After a hearing, the motion was denied.

Immediately prior to trial before another judge, the motion was renewed. This time

the motion was granted. The court found that the affidavit established probable cause to believe that a crime had been committed and a reasonable suspicion to believe that the persons who abducted and robbed Westerlind were the same persons who attempted to rob Batchelor. However, in determining whether the information obtained from the anonymous telephone call could be used in support of the order the court concluded that since the reasonable grounds requirement of Crim.P. 41.1(c)(2) rested on the anonymous telephone call, and there was no information concerning the reliability of the anonymous caller, the order was not supported by sufficient verification. As a result, the voice samples, photograph, and fingerprints of Davis were suppressed.[2]

## II.

The sole issue for resolution is whether a court in issuing an order for nontestimonial identification may consider information incorporated in an affidavit which was obtained by the affiant from an anonymous telephone caller.

In considering the use of information obtained from the anonymous telephone call, the trial judge relied on an *Aguilar-Spinelli*[3] analysis, which requires evidence of the informant's credibility and the reliability of his information (the "veracity prong"), and facts that adequately reveal the means by which the informant obtained the information in question (the "basis of knowledge" prong). He concluded that the "objective verification is not sufficient to give credibility to the informant."

■ We agree that the test of *Aguilar-Spinelli* was not met. First, there was no basis to determine the reliability of the informant. Second, there was no way to

---

**2.** The trial court further ruled that the police department did not act in bad faith and that the county judge had erred in entering the order based on the affidavit.

**3.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Subsequent to the trial court's

ruling, the United States Supreme Court in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), rejected the *Aguilar-Spinelli* standard and adopted a "totality of the circumstances" standard in determining whether an affidavit for a search warrant satisfied the probable cause standard of the fourth amendment to the United States Constitution.

verify how the informant obtained his information. However, we do not believe that test is mandated under the circumstances present here because we are not dealing with the probable cause standard for a search warrant, but rather with an order for a limited intrusion based upon the lower standard of reasonable grounds to suspect that a person committed an offense.

Crim.P. 41.1(c) provides that a nontestimonial identification order may be issued only on an affidavit establishing:

"(1) that there is probable cause to believe that an offense has been committed;

(2) that there are reasonable grounds, not amounting to probable cause to arrest, to suspect that the person named or described in the affidavit committed the offense; and

(3) that the results of specific nontestimonial identification procedures will be of material aid in determining whether the person named in the affidavit committed the offense."

In *People v. Madson,* 638 P.2d 18 (Colo. 1981), we held that Crim.P. 41.1 was not facially unconstitutional because it permitted an investigatory detention on less than probable cause. We determined that limited intrusions into privacy on less than probable cause are permissible when there is an articulable and specific basis for suspecting criminal activity, the intrusion is limited and justified by law enforcement interests, and there is an opportunity to obtain review by a judicial officer before the evidence is admitted in a criminal proceeding.

Here, there is no dispute there was probable cause to believe that an offense had been committed, and the results of nontestimonial identification procedures would be of material aid in determining whether the person named in the affidavit committed the offense. The question is whether there were reasonable grounds, not amounting to probable cause to arrest, to suspect that the defendant committed the offense.

■■■ "Reasonable grounds to suspect" is synonymous with "reasonable suspicion to believe" and requires a lower quantum of proof than probable cause. *United States v. Afanador,* 567 F.2d 1325 (5th Cir.1978); *United States v. Gorin,* 564 F.2d 159, 161 (4th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). The decisions of both the United States Supreme Court and this court require that the quantum of evidence necessary for reasonable suspicion be judged against an objective standard. As applicable to this case, that standard is whether there are specific and articulable facts which, taken together with rational inferences from these facts, establish reasonable grounds to suspect that the defendant has committed the crime for which the nontestimonial identification evidence is sought. *See, e.g., Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969); *People v. Thomas,* 660 P.2d 1272 (Colo.1983); *People v. Tate,* 657 P.2d 955 (Colo.1983); *People v. Madson, supra.* In making this determination the totality of circumstances recounted in the affidavit must necessarily be considered.

■■■ The facts stated in the affidavit support the conclusion that the standard of reasonable suspicion to believe has been satisfied. These facts included the report of the crimes which had been committed, and the victim's identification of her assailants, the telephone tipster's reference to the specific crimes under investigation, naming the defendant by name, the home address of the defendant's mother, and overhearing the defendant "talking about pulling some robberies." In addition, the police records showed that the defendant's physical characteristics were comparable to those described by the victims.

These specific facts, taken together with rational inferences from these facts, suffice for the common sense judgment called for to establish the reasonable suspicion required by Crim.P. 41.1(c)(2). *See, e.g., United States v. White,* 648 F.2d 29 (D.C. Cir.1981); *United States v. Sierra-Hernan-*

*dez,* 581 F.2d 760 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978) (reasonable suspicion established based on anonymous tip corroborated only by observations of innocent details); *United States v. McClinnhan,* 660 F.2d 500 (D.C.Cir.1981) (reasonable suspicion established by an anonymous tip that had "some objective foundation").

We reverse and remand to the trial court for further proceedings.

LOHR and NEIGHBORS, JJ., do not participate.