**UNITED STATES of America,
Appellant,**

v.

**Perry L. McBRIDE and Roy
Villanueva, Appellees.**

**No. 85–2254.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1986.

Decided Sept. 24, 1986.

---

Richard L. Richards, Asst. U.S. Atty., Des Moines, Iowa, for appellant.

Dennis L. Eaton, Des Moines, Iowa, for appellees.

Before JOHN R. GIBSON and WOLL-MAN, Circuit Judges, and HARRIS,* Senior District Judge.

WOLLMAN, Circuit Judge.

This appeal from an order suppressing evidence requires that we consider the degree to which police may rely on anonymous tips in forming the reasonable, articulable suspicions necessary to justify investigatory stops. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

A Des Moines, Iowa, police dispatcher at approximately 4 p.m. on August 1, 1985, was told by an anonymous caller that a man had just left the caller's house with four ounces of heroin in a silver foreign Japanese-like car, Illinois license YFM 640,[1] headed toward 13th and College. The dispatcher checked the license number through the police computer system and learned that Illinois plate YFM 640 had been issued to a gray or silver Volkswagen, a vehicle similar in size and shape to many Japanese cars but of German origin. At the direction of a narcotics officer the dispatcher notified police patrolling in the relevant area to watch for and stop the above-described car.

About 8:45 p.m. that same day police spotted a silver Volkswagen bearing the Illinois plates in question being driven about eight blocks from the intersection mentioned by the anonymous caller. The officers checked to see that the vehicle was still wanted and then stopped it, finding it to be occupied by two men. While the officers were attempting to obtain identification from these men they observed possible drug paraphernalia and felt that the

men were acting suspiciously. The officers ultimately found on the men and in the car two ounces of heroin, a small plastic baggy containing marijuana, and nearly $1,800 in cash. The men, Perry McBride and Roy Villanueva, were charged with possession with intent to distribute heroin. *See* 21 U.S.C. § 841(a)(1) (1982).

In pretrial motions, McBride and Villanueva asked that the items found by the police be suppressed from evidence on the ground that they were discovered through an unreasonable search and seizure—that is, one without just cause—in violation of McBride's and Villanueva's rights under the fourth amendment. The district court, in an opinion issued from the bench, agreed, concluding that the police had no basis for their actions other than the anonymous telephone tip and that such a tip, under *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), was not sufficient to support even an investigatory stop. The further inquiry conducted by the police, the court held, did not add anything to the officers' suspicions.

Although absent clear error we are bound by the district court's findings of fact regarding the circumstances of McBride's and Villanueva's arrests, we may reverse if that court's ultimate ruling on suppression reflects an erroneous view of the applicable law. *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir.1986); *United States v. Lewis,* 738 F.2d 916, 920 (8th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985); *United States v. Ross,* 713 F.2d 389, 392 (8th Cir.1983). Finding such error here, we reverse.

■ The parties do not dispute that the police officers' initial halting of the Volkswagen constituted only an investigatory

---

* The HONORABLE OREN HARRIS, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The transcript of the call apparently suggests that the license number given by the informant was YF*N* 640, but the district court stated that it

appeared that the dispatcher had understood the caller to say and had used "M." Either way, we think it unlikely that error in one figure would affect our decision on reasonable suspicion. *See Wantland v. United States,* 754 F.2d 268, 270 (8th Cir.1985) (per curiam).

stop, *see United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985), permissible under the fourth amendment on a "reasonable suspicion, based on specific and articulable facts, that [the vehicle's] occupants [were] or [had] been involved in criminal activity." *United States v. Doffin*, 791 F.2d 118, 120 (8th Cir.1986) (per curiam). Such reasonable suspicion, like the probable cause necessary for an arrest, may be based on a tip from an informer, *see Adams*, 407 U.S. at 147, 92 S.Ct. 1923–24; and although we have held in a slightly different context that "[a]n anonymous tip requires some measure of corroboration to warrant official action," *Smothers v. Gibson*, 778 F.2d 470, 473 (8th Cir.1985) (strip search of prison visitor requires some objective minimum reasonableness), the degree of reliability that must be shown is less when police action need be justified only by reasonable suspicion rather than by probable cause. *United States v. Childress*, 721 F.2d 1148, 1150 (8th Cir.1982), *rehearing en banc on limited issue*, 715 F.2d 1313 (8th Cir.1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984). In view of the Supreme Court's holding in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), that probable cause may exist in cases involving anonymous informants based on the "totality of the circumstances," we cannot agree that an anonymous tip alone can never support a reasonable, articulable suspicion of criminal activity. *See also United States v. Porter*, 738 F.2d 622, 625 (4th Cir.) (en banc) ("An informant's tip can provide the justification for a *Terry* stop even if the informant's reliability is unknown * * *."), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323, (1984); *United States v. Andrews*, 600 F.2d 563, 569–70 (6th Cir.) (citing cases as standing for the proposition that "information from an unknown informant will support a stop if sufficiently

detailed and/or corroborated"), *cert. denied*, 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979). Thus, we consider the anonymous tip before us on its own merits to see whether it bore indicia of reliability sufficient to support the given police action. *See Adams*, 407 U.S. at 147, 92 S.Ct. at 1923–24; *cf. Hunter v. Augur*, 672 F.2d 668, 675–76 (8th Cir.1982) (prison strip searches).

We note first that the anonymous caller's tip suggested some basis for firsthand knowledge, *see generally Gates*, 462 U.S. at 233–35, 103 S.Ct. at 2329–31, in that it placed the suspect at the caller's house. In addition, the caller knew where the suspect was headed. These details indicate that the caller had some contact with the suspect through which the caller consistently could have known personal facts about the suspect, such as the suspect's involvement in crime.

■ In addition, the caller's information was corroborated in two respects. The dispatcher verified that Illinois license plates so numbered did exist and were assigned to a small silver foreign car, and the officers observed the described vehicle in the designated neighborhood.[2] As we have made clear even in cases involving the higher degree of reliability needed to establish probable cause, it is immaterial that the details corroborating an informant's tip are as consistent with innocent conduct as with illegal activity. *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir.1986). Courts have recognized that persons through malice might fabricate tips and meet this test for corroboration by adding neutral information such as location or vehicle description, *see United States v. McClinnhan*, 660 F.2d 500, 502 (D.C.Cir.1981); but those courts have also recognized that the choice for police is between making limited investigatory stops and ignoring citizen tips. *See United States v. White*, 648 F.2d 29, 45 (D.C.Cir.), *cert. denied*, 454 U.S. 924, 102

---

**2.** McBride and Villanueva argue that the police decided to make the investigatory stop before verifying that the car sought could be found in the designated neighborhood. The record shows, however, that the information from the

tip was transmitted only to officers patrolling in the general area of the intersection identified by the caller and that the officers who spotted the vehicle checked again with the narcotics division before making the stop.

S.Ct. 424, 70 L.Ed.2d 235 (1981). Some criminal conduct is inherently impossible to verify by visual observation alone. *E.g., McClinnhan,* 660 F.2d at 503 (concealed weapon).

■ The information on which the police acted here is similar to that held sufficient to give rise to a reasonable articulable suspicion in *McClinnhan,* where officers stopped a pedestrian based on an anonymous caller's description and allegation that the man was carrying a gun in his briefcase. McBride and Villanueva make much of the fact that the informant here did not mention the physical characteristics of the man who was allegedly driving the silver car and did not mention a second man, but we do not believe these considerations undercut the reliability of the tip inasmuch as the caller gave a specific license number and alleged that the heroin was in the vehicle. In addition, the eight-block disparity between the intersection identified by the caller and the location where the vehicle was found is not greater than might reasonably be expected. *See United States v. Aldridge,* 719 F.2d 368 (11th Cir. 1983) (large white car with broken tail light stopped one mile from construction site on tip of alleged neighbor that persons in car of that description were fooling around with construction vehicles); *cf. United States v. Gorin,* 564 F.2d 159 (4th Cir.1977) (white, six-foot male wearing black leather jacket and reddish shirt stopped seven blocks away after bartender reported that a man of that description in his establishment was carrying a gun), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978).

Finally, McBride and Villanueva point to the time gap of nearly five hours between the police dispatcher's receipt of the tip and the stop of the silver Volkswagen. The inability of the officers to find the car near the identified area at the time of the tip to some degree vitiates that aspect of the corroboration (though we observe that the dispatcher testified that it might have been thirty minutes before the patrolling officers were actually in possession of the tip),

and we certainly would consider the time lag a major problem had the police acted merely on a general description of a car rather than on a specific license number or had the car been sought in connection with a fast-breaking crime. Here, there is no question that the vehicle stopped was the vehicle police sought as the result of the tip.

We reiterate that our decision to uphold the investigatory stop by police in this instance is based on an individualized evaluation of the particular anonymous tip in the totality of the circumstances. We do not mean to suggest that tips less substantial in terms of the personal basis of the informant's knowledge, the specificity of the information, and the nature and circumstances of the alleged illegal activity would satisfy the fourth amendment's requirement of reasonable, articulable suspicion. We hold only that the tip in this case passes constitutional muster.

We reverse the order of suppression and remand to the district court for further proceedings.