**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Cheryl Lavonn FLIPPIN,**
**Defendant–Appellee.**

**No. 90–30057.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided Jan. 15, 1991.

As Amended on Denial of Rehearing
and Rehearing En Banc
March 20, 1991.

Johnathan S. Haub, Asst. U.S. Atty., Portland, Or., for plaintiff-appellant.

Marc Sussman, Cournoyer & Sussman, Portland, Or., for defendant-appellee.

Before WRIGHT, POOLE and THOMPSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This appeal concerns a seizure from the defendant of her make-up bag and a subsequent search of it, while in her residence. The district court granted defendant's motion to suppress evidence obtained during the search, finding the seizure and search violative of the Fourth Amendment. We hold that reasonable suspicion that the suspect was armed was sufficient justification for the seizure. Exigent circumstances justified the subsequent warrantless search of the closed bag. We reverse the district court's grant of the motion to suppress and remand for further proceedings.

I

On May 22, 1989 the police observed Cheryl Flippin entering a second-hand shop followed by her companion, Edward Donnes. A police officer stopped and questioned Donnes about a large knife he was carrying. The knife was seized. After determining that Donnes had no driver's license, the officer warned him not to drive the car in which he had arrived. Later, police saw him driving the car. He was stopped again and taken into custody. A search of the car revealed drug paraphernalia and a key to the Cedars Motel.

Sergeant Marsh went to the Cedars Motel and found Donnes listed as a visitor in a room rented by Cheryl Flippin under the alias of Darla Schultz. To identify Donnes, Marsh went to Flippin's room and questioned her. She was asked to identify herself, but could produce no identification.

The next day, Deputies Bowen and Martin went to the motel to see if they could identify Flippin. For the purposes of this appeal we assume the officers entered her room upon her consent.[1] They said they were there to investigate her identity. Donnes, released from jail earlier, was sitting on the bed counting money. Bowen patted him down and checked the immediate area for weapons. He found none.

Bowen suggested the officers look at the car registration to determine Flippin's real name. She directed Donnes to retrieve it for her. Accompanied by Bowen, he left the room to look for the registration.

While Bowen and Donnes were absent, Martin turned away from Flippin. From the corner of his eye he saw her grab a make-up bag. She held it close to her and refused to relinquish it. He forcibly took it from her. He testified that he feared she was attempting to arm herself and, because the bag felt heavy, he believed it contained a loaded gun. He opened the bag and found a gun and two vials of cocaine. Both Donnes and Flippin were arrested and the room was searched.

The district court granted Flippin's motion to suppress the evidence obtained in the search of the bag and the room, ruling that the seizure and search of the bag violated her Fourth Amendment rights. The government appeals.

This court reviews de novo motions to suppress. *United States v. Limatoc*, 807 F.2d 792, 794 (9th Cir.1987). Whether a search and seizure were based on sufficient suspicion under the Fourth Amendment is a mixed question of law and fact reviewed

---

1. For the purpose of ruling on the suppression motion, the district court assumed Flippin's consent was voluntary. The parties dispute the nature of the consent, but it is not at issue here.

de novo. *United States v. Thomas*, 863 F.2d 622, 625 (9th Cir.1988).

## II

### A

We must determine first whether reasonable suspicion that the suspect was arming herself is sufficient constitutional justification for the seizure of the make-up bag. The government concedes that there was no probable cause to enter the motel room or to search it or the defendant.

The court characterized Officer Martin's actions as a search and seizure of a suspect in her residence. Because "[t]he sanctity of the home enjoys special solicitude in Fourth Amendment jurisprudence," *United States v. Winsor*, 846 F.2d 1569, 1574 n. 5 (9th Cir.1988), probable cause is required for a dwelling-place search or seizure. *Arizona v. Hicks*, 480 U.S. 321, 328, 107 S.Ct. 1149, 1154 n. 5, 94 L.Ed.2d 347 (1987). The court concluded that without probable cause and exigent circumstances the warrantless seizure of her make-up bag was invalid.

The government argues that the seizure was permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, a police officer may pat down a suspect for weapons when he has reasonable suspicion that the suspect is armed.[2] *Id.* at 30, 88 S.Ct. at 1884–85. Officer Martin, having a legitimate right to be in the room, allegedly developed a reasonable suspicion that Flippin was attempting to arm herself when she grabbed the bag.

Relying on *Maryland v. Buie*, — U.S. —, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the government urges that the *Terry* reasonable suspicion standard should apply to any protective search, regardless of location. In *Buie*, while effecting an in-house arrest pursuant to an arrest warrant, the police swept the house for other

dangerous persons. *Id.* 110 S.Ct. at 1095. The sweep, based only on reasonable suspicion, was upheld. *Id.* at 1098.

Flippin argues that this is not a stop-and-frisk case and that the probable cause requirement for residential searches and seizures provides a needed level of protection, which she was denied. Her interpretation of *Buie* is that the probable cause hurdle to enter a residence must be overcome, either through a search or arrest warrant or exigent circumstances, before reasonable suspicion can be used for peripheral or unexpected encounters. We reject this view.

The *Buie* court focused on a concern for police safety in the confines of a suspect's dwelling. *Id.* at 1098. *Terry*, an on-the-street stop, involved similar safety concerns.

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.... [I]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry*, 392 U.S. at 23–24, 88 S.Ct. at 1881–82. Writing for the majority in *Buie*, Justice White found *Terry* instructive. *Buie*, 110 S.Ct. at 1097–1098.[3]

The protective search was upheld in *Buie* because the police had a legitimate right to enter the home and "[o]nce inside, the potential for danger justified a standard of less than probable cause for conducting a limited protective sweep." *Id.* at 1098 n. 1. This plainly implies that, following a consent entry, no probable cause predicate is needed to pat down for weapons, if it is independently justified by a reasonable sus-

---

**2.** A stop-and-frisk under *Terry* constitutes two independent actions, each requiring separate justifications. The stop must be based on a suspicion of criminal activity and the frisk on a reasonable suspicion that the person is armed. *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir.1988). Only the frisk portion of *Terry* is at

issue here because Flippin consented to the entry.

**3.** Justice Brennan, in dissent, characterized the majority's opinion as extending *Terry* into the home. 110 S.Ct. at 1101 (Brennan, J., dissenting).

picion that the suspect is armed.[4]

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967). Police must be allowed to protect themselves before a potential threat of danger develops into a tragedy.

The court erred in requiring probable cause for the seizure. When the police have lawfully entered a dwelling and have a reasonable suspicion that a suspect is armed, a *Terry* pat down for weapons is permissible.

### B

■ Flippin argues that the seizure and search of her makeup bag was unconstitutional because it went beyond the scope of her consent to the officers' entry. The scope of a warrantless search and seizure is limited by its underlying justification or exception to the warrant requirement. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983). Because we find *Terry* applicable, Flippin's behavior, not her consent, serves as the underlying justification for the seizure.

### III

Flippin contends that reasonable suspicion was lacking at the time of the seizure. We disagree.

Reasonable suspicion is "a reasonable belief based on specific and articulable facts." *Buie*, 110 S.Ct. at 1099–1100. A court must determine "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. The suspect's behavior is significant in the determination.

*Compare United States v. Laing*, 889 F.2d 281, 286 (D.C.Cir.1989) (reasonable suspicion found when the suspect moved his hand to the front of his pants and then fled), *cert. denied*, —— U.S. ——, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990) *with Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–43, 62 L.Ed.2d 238 (1979) (no reasonable suspicion where the defendant made no gestures to indicate he was armed) *and United States v. Thomas*, 863 F.2d 622, 629 (9th Cir.1988) (no reasonable suspicion because the defendant did not act furtively or move abruptly).

■ Here, the officer was alone in the room with the defendant. He was aware that, on the previous day, her companion had possessed a large knife. When the officer turned away and she grabbed the bag, he acted reasonably in suspecting that she was attempting to take advantage of the situation by arming herself. The seizure of the bag did not violate her constitutional rights.

### IV

■ Our inquiry now focuses on whether having gained control of the closed make-bag, the officer's immediate opening of it was an unconstitutional search. The government urges that the court erred in ruling that once the make-up bag was seized, there was no longer any risk of danger and, therefore, no reason for the warrantless search. We agree that the district court erred.

The critical factor is whether the danger justifying the seizure still existed once the officer had custody of the container. If the exigency was gone, a search warrant must be obtained before it may be opened. *Arkansas v. Sanders*, 442 U.S. 753, 763, 99 S.Ct. 2586, 2592–93, 61 L.Ed.2d 235 (1979); *United States v. Robertson*, 833 F.2d 777, 785 (9th Cir.1987).[5] Because the officer did

---

**4.** Pre–*Buie* cases upholding *Terry* frisks of third parties found in or near a residence also support our use of the reasonable suspicion standard here. While these cases involve search or arrest warrants, the *Terry* analysis focuses on the need for protection from dangerous suspects, not the probable cause predicate for being on the premises. *See United States v. Patterson*,

885 F.2d 483, 484–85 (8th Cir.1989); *United States v. Bonds*, 829 F.2d 1072, 1074–75 (11th Cir.1987); *United States v. Flett*, 806 F.2d 823, 828 (8th Cir.1986).

**5.** The government relies on *United States v. Vigo*, 487 F.2d 295, 298 (2nd Cir.1973) and *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th

not feel the gun through the bag, this case is not governed by the "plain touch" rule.

Flippin had grabbed the bag as Martin turned away. When he asked her for the bag, she refused to relinquish it, forcing him to struggle with her until he gained custody of it. Thus, our case is distinguishable from *United States v. Vaughan*, 718 F.2d 332 (9th Cir.1983), where there was no struggle over a briefcase that was searched in violation of the Fourth Amendment. *Id.* at 335. Unlike *Vaughan*, here Officer Martin had a reason to open the container. Flippin grabbed the bag when the officer turned away. She demonstrated by her struggle for the bag that she was willing to use force to possess it. The bag felt heavy and the officer knew Flippin's companion had been armed the previous day. Flippin and the officer were alone in the room. Faced with a split-second decision, the officer acted reasonably to protect himself.

Merely gaining control of the bag did not dissipate the danger and exigent circumstances in this case. The search of the bag was reasonable. We reverse the district court's grant of the motion to suppress.

## CONCLUSION

The court erred in requiring a probable cause predicate for the seizure of the bag. Once the officer was lawfully in the room, a reasonable suspicion that the defendant was arming herself was sufficient for a *Terry* frisk and seizure of weapons. The seizure of the make-up bag did not violate the defendant's Fourth Amendment rights. The exigency of the circumstances did not dissipate when the officer finally gained control of the bag. The immediate warrantless search did not violate Flippin's Fourth Amendment rights. The order suppressing the evidence taken in the warrantless search is REVERSED. We REMAND for further proceedings.

Cir.1971). Both courts upheld a *Terry* pat down of a woman's purse. These cases, however, were decided before *Sanders,* which requires a search warrant for containers once the exigency dissipates 442 U.S. at 766, 99 S.Ct. at 2594. Our focus must be on whether exigent circumstances existed at the time of the search.

The government also relies heavily on *United States v. McClinnhan,* 660 F.2d 500 (D.C.Cir. 1981), which upheld a search of a briefcase for weapons after a *Terry* stop. The *McClinnhan* court held that the lack of probable cause for a search warrant contributed to the exigency, justifying the on-the-spot search. The court reasoned that, if an immediate search was not allowed, the officers would be forced to return the case "leading to a recrudescence of the original danger." *Id.* at 505. We decline to follow *McClinnhan*'s boot-strapping logic. It ignores the very purpose of the Fourth Amendment by eliminating the probable cause requirement. Exigency must be grounded on something other than the mere inability to meet the legal standards for a search warrant.