990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard H. SMITH, Defendant-Appellant.
 No. 92-30263.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1993.*
Decided March 24, 1993.
 
 Before WALLACE, Chief Judge, and FARRIS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Richard H. Smith appeals his convictions, following entry of conditional guilty pleas, for possession with intent to distribute marijuana and manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), (B)(1)(C), and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). He contends the district court erred by denying his motion to suppress the evidence. He argues the district court erroneously held that the investigatory stop was not unreasonably intrusive, thereby constituting an arrest unsupported by probable cause. He further argues that it was unlawful for agents, without a search warrant and probable cause, to seize his knapsack. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review de novo the district court's denial of a motion to suppress evidence. United States v. Flippin, 924 F.2d 163, 164 (9th Cir.1991). Similarly, we review de novo whether the detention of Smith prior to his formal arrest exceeded the bounds of an investigatory stop. See United States v. Ricardo D., 912 F.2d 337, 339 (9th Cir.1990). We review for clear error the district court's factual findings. United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir.1988), cert. denied 488 U.S. 1034 (1989) and cert. denied, 489 U.S. 1029 (1989).
 
 
 4
 Here, Drug Enforcement Administration (DEA) Special Agent Ian McKenzie received an anonymous telephone call on January 8, 1992. The caller informed McKenzie that a man named Richard Smith or Johnson (Smith) was operating a multi-pound marijuana grow operation in Kitsap County, Washington. The caller informed McKenzie that Smith traveled to West Seattle on Fridays to distribute the marijuana. The caller described Smith as approximately 6'3", 250-260 pounds, with light brown hair. The caller added that Smith usually wore a baseball cap and a brown leather jacket, and carried a blue knapsack containing marijuana. The caller further told McKenzie that Smith would be in West Seattle to sell marijuana.
 
 
 5
 On January 10, 1992, at approximately 12:15 p.m., the anonymous caller contacted McKenzie a second time, informing him that Smith was currently selling marijuana at Vann's Restaurant in West Seattle. The caller told McKenzie that Smith was wearing a University of Washington baseball cap and a brown leather jacket, and was carrying a blue knapsack. When Agent McKenzie arrived at Vann's Restaurant, he spotted a person matching the caller's description. Smith, who was with several other individuals when McKenzie arrived, left the restaurant and entered a car.
 
 
 6
 On January 14, 1992, the caller telephoned again, informing McKenzie that Smith would be at Vann's Restaurant on January 17, 1992, at approximately 1:00 p.m. At approximately 12:05 p.m., however, the agents received a call from a second source, stationed at Vann's, informing them that a man matching the description of Smith was at the restaurant. Agents McKenzie and Lasher promptly drove to Vann's.
 
 
 7
 Upon their arrival at Vann's, the agents spotted Smith engaged in conversation with two men seated at another table. Agent McKenzie approached Smith while Lasher confronted the two individuals at the other table. Within Smith's hearing, Lasher identified himself as a DEA agent and ordered the two men to keep their hands on the table where he could see them. McKenzie also identified himself to Smith as a DEA agent and asked Smith if he would answer some questions. Smith agreed. McKenzie then asked Smith to move to a separate table so they could talk in private. Again, Smith agreed. As they moved from the bar to the dining area of Vann's, McKenzie noticed that Smith had left his knapsack behind. McKenzie retrieved the knapsack in order to keep it together with Smith. Although Smith responded that it was not his knapsack, McKenzie brought it with him and placed it on the table between them.
 
 
 8
 Once seated, McKenzie asked Smith for some identification. Smith, appearing agitated, pulled out his wallet. He asked McKenzie why he didn't just go ahead and arrest him. McKenzie responded that he had no intention of arresting him and that he just wanted to ask him some questions. Immediately after saying that, McKenzie noticed the odor of marijuana emanating from the knapsack on the table. At that point, he decided to take Smith into custody. McKenzie pulled out his Miranda card and began to read Smith his rights. Smith grabbed the knapsack, struck McKenzie on the head with it and ran toward an exit. McKenzie called Lasher for help and a struggle ensued in which the agents used manual blows to subdue Smith. The agents arrested Smith and discovered a loaded pistol inside Smith's jacket during a search incident to arrest. The Seattle Police then transported Smith to the DEA office. During a routine inventory of his clothing incident to arrest, agents discovered two marijuana cigarettes in his shirt pocket.
 
 
 9
 At the DEA office, Smith acknowledged that the blue knapsack was his and consented to a search of its contents. The agents found marijuana inside the bag. The agents also determined Smith's full name and address. Agents surveilled Smith's residence and detected a distinct odor of marijuana emanating from the house. Using a thermal imaging device, the agents determined that the surface temperature was significantly higher in the basement than in the rest of the house, consistent with a marijuana grow operation. Based upon this information, and the marijuana found in the knapsack, the government obtained a search warrant for Smith's residence. The search revealed a marijuana grow operation consisting of approximately ninety plants.
 
 
 10
 The district court found that the agents' initial detention of Smith at the restaurant was lawful. The district court also found the detention of the bag to be lawful. We agree.
 
 
 11
 * Investigatory Stop
 
 
 12
 Smith contends the DEA agents exceeded the scope of a limited detention by moving him from the lounge area of Vann's to its dining area for questioning. This contention has no merit.
 
 
 13
 "In determining whether an official detention has ripened into an arrest, we consider the 'totality of the circumstances.' " United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir.1990) (quoting United States v. Baron, 860 F.2d 911, 914 (9th Cir.1988), cert. denied, 490 U.S. 1040 (1989)). An officer with reasonable suspicion of criminal activity may temporarily detain an individual for questioning limited to the purpose of the detention. Florida v. Royer, 460 U.S. 491, 498 (1983). "The investigative methods employed should be minimally intrusive, yet, that a less intrusive method was available does not necessarily render the seizure unreasonable." United States v. Holzman, 871 F.2d 1496, 1501 (9th Cir.1989) (citation omitted).
 
 
 14
 Here, Smith concedes the agents had a reasonable suspicion that he was involved in a marijuana grow operation which warranted temporarily detaining him for questioning. In addition, Vann's is a public place. In asking Smith to move from the lounge to the restaurant area, Agent McKenzie simply moved Smith from one public area to another. McKenzie's removal of Smith from the company of his friends in the bar, into a nearby booth, was a limited and justifiable intrusion on Smith's freedom. See Holzman, 871 F.2d at 1502 (officers did not exceed the bounds of an investigatory stop where they confronted the defendant near the outside door of the department store, frisked for weapons, moved him to a remote counter area, asked for identification, and briefly interrogated him).
 
 II
 Detention of Knapsack
 
 15
 Smith contends McKenzie exceeded the scope of an investigative detention by carrying Smith's knapsack from the lounge to the restaurant booth. This contention has no merit.
 
 
 16
 Where an officer is aware of specific and articulable facts warranting a reasonable belief that a person's baggage contains narcotics, the officer may temporarily detain the bag in order to pursue further investigation. United States v. Place, 462 U.S. 696, 706 (1983). The detention of the bags, however, must be limited in scope to the purposes of the detention. Id.
 
 
 17
 Here, McKenzie had a reasonable suspicion that the knapsack belonged to Smith and that it contained narcotics. Based upon that belief, McKenzie was authorized to temporarily detain the knapsack in order to determine whether it contained narcotics. See Place, 462 U.S. at 706. McKenzie did not exceed the scope of an investigative detention by carrying Smith's knapsack to the restaurant booth, where he detected the smell of marijuana emanating from it. See id. at 706-07.
 
 
 18
 Therefore, the district court did not err by denying Smith's motion to suppress the evidence. See Flippin, 924 F.2d at 164.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3