UNITED STATES of America,
Plaintiff–Appellee,

v.

Bill McNEAL, Defendant–Appellant.

No. 90–3834.

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1991.

Decided Feb. 3, 1992.

Kenneth S. McHargh, Asst. U.S. Atty., Blas E. Serrano, Asst. U.S. Atty. (argued and briefed), Robert E. Bulford, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Rocco J. Russo (argued and briefed), Cleveland, Ohio, for defendant-appellant.

Before MILBURN, Circuit Judge, CONTIE and KRUPANSKY, Senior Circuit Judges.

KRUPANSKY, Senior Circuit Judge.

Defendant-appellant Bill McNeal (McNeal) has appealed the district court's denial of his Motion to Suppress Evidence together with his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a); possession with intent to distribute crack cocaine, 21 U.S.C. § 841(a) and 841(b)(1), both of which counts specified that the offenses occurred within 1,000 feet of a school in violation of 21 U.S.C. § 845a; and his conviction for violating 18 U.S.C. § 924(c)(1), charging possession of a firearm during the commission of a drug offense.

On May 3, 1990, subsequent to a hearing conducted on April 20, 1990, the district court issued an order denying the defendant's motion to suppress damaging evidence confiscated from his person while on the premises of a third party.

On June 6, 1990, the defendant entered a conditional plea of guilty to all counts reserving his right to appeal the district court's ruling denying his Motion to Suppress Evidence.

On September 10, 1990, the defendant was sentenced to a term of imprisonment of 180 months on counts 1 and 2, and 60 months on count 3 to run consecutively with counts 1 and 2 followed by a 10 year period of supervised release.

Defendant timely appealed.

The record disclosed that on December 5, 1989 at approximately 6 p.m., Inspector Paul Hartman (Hartman) as a member of a multi-agency street gang task force visited the King Kennedy Housing Project located at E. 59th Street and Woodland Avenue in the city of Cleveland, Ohio to observe and investigate reported drug and other related violent crime activity.

The King Kennedy Housing Project has a notorious reputation as a high crime area and a major drug distribution center attendant with violent crimes where:

[t]here is a substantial amount of drug trafficking. There is a tremendous amount of violence, shooting, assaults, homicides. And specifically in reference to the greens, the informant information had been that a large quantity of drugs had been moved through the area, or been moving through the area by some heavily armed males.[1]

*J.App.* at 24–25. Shortly after the officers' arrival, Hartman was approached by an informant who had on past occasions provided reliable information which had successfully resulted in the recovery of drugs and weapons and several related arrests. The informant advised the officers that a known drug dealer named "Bill" who was heavily armed and a dangerous killer, was in apartment 104N with a substantial quantity of drugs. As the informant directed the officers' attention to the location of

---

1. The King Kennedy Housing Project is a:
 complex ... laid out in pods, ... or units, essentially consisting of four housing units around a courtyard.
 Each one of these pods or complexes bears different color doors; green doors, white

doors, yellow doors or red doors, and are known among the residents there as the greens, the yellows, the whites or reds. *J.App.* at 23. Apartment 104N was located in the green section.

apartment 104N, they observed a person in the kitchen window of the unit. Officers proceeded to secure apartment 104N pending the issuance of a search warrant. Hartman knocked on the apartment door while identifying himself as a police officer.

Tina Ward (Ward), the record lease holder of the apartment, responded by opening the door. She inquired if the officers had a warrant. Hartman advised her that the premises would be secured pending the arrival of a warrant. Upon entering Ward's premises, the officers conducted a protective sweep of the unit during which Hartman observed the appellant, later identified as McNeal, retreating along a hallway in an effort to conceal himself in a rear bedroom. Upon confronting McNeal in the bedroom, he was observed backing away, holding a bag in his right hand. In a coordinated single movement, McNeal transferred the bag to his left hand and with his right hand reached for his left armpit for what the officers believed to be a weapon concealed in his tunic. The officers ordered him to stop and raise his arms above his head. He complied immediately. At that juncture, the officers reasonably suspected that McNeal was armed and dangerous and conducted a limited search of his person which disclosed a fully loaded .45 caliber semi-automatic pistol. The officers arrested the appellant because they believed he had committed a crime. The search of his person and the bag which he had in his possession, conducted incident to his arrest, disclosed a substantial quantity of cocaine, $4,768.00 in cash and a pager.

The appellant's assignments of error, most liberally construed, have unartfully charged that:

A. His reasonable expectation of privacy in Ward's apartment permitted him to challenge the warrantless entry and search of Ward's *premises* because:

1. it was not supported by probable cause to believe a crime was being committed within the premises; and/or

2. it was not supported by exigent circumstances.

B. *His warrantless arrest* and confiscation of property from his *person* while on Ward's premises was not supported by probable cause *before officers entered* Ward's premises because the agents, before entering her apartment, were without information of sufficient weight to support a belief that he, the appellant, had committed a crime.

The pivotal error, briefed and argued by McNeal in his appeal to this court was an infringement of his Fourth Amendment constitutional rights resulting from an alleged unlawful official entry into Ward's apartment. In his motion to suppress damaging evidence confiscated from his person, McNeal urged that he had an expectation of privacy in Ward's apartment, and that, because the warrantless entry of her premises was illegal, the subsequent confrontation and confiscation of contraband from his person were the "contaminated fruit of the poisonous tree", i.e., of the unlawful entry, and should be suppressed. It was patently clear before the district court, as well as this court on appellate review that in the event that McNeal failed to meet his burden of proving a legitimate expectation of privacy in Ward's apartment, he was, as a consequence, stripped of his "standing" to challenge the legality of the warrantless entry into Ward's residence, a final disposition that foreclosed the necessity to consider the remaining issues of "exigent" circumstances to enter the apartment unit and the existence of probable cause of sufficient weight to believe a crime was being committed therein.[2] At the conclusion of an evidentiary hearing, the trial court de-

---

**2.** Ward, of course, as the apartment's legal tenant of record, had the option of pursuing a civil action for damages against the officers pursuant to 42 U.S.C. § 1983 to vindicate any asserted personal Fourth Amendment right to privacy in her home. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, any violation of Ward's personal Fourth Amendment rights which may have resulted from an illegal warrantless entry into her apartment did not inure to appellant. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. McNeal*, 735 F.Supp. 738 (N.D.Ohio 1990).

cided, *after expressly according greater credibility to the government's witnesses than to Ward,* that McNeal lacked an expectation of privacy in the apartment, and accordingly, he had no standing to challenge the official entry and search of her residence. As related in the district court's opinion:

> The issue that remains to be decided is whether the defendant in this case had any legitimate expectation of privacy in Tina Ward's apartment whatsoever on the night in question. While the defendant did have a key to the apartment, he also had keys to other apartments in the complex in which he did not live. He had no clothes, no toothbrush, nothing on his person or in the apartment that would indicate that he intended to spend the night in question in Ward's apartment, nothing that would indicate that he was more than a casual, transient visitor on that night. This Court finds that the facts adduced at the hearing reveal that the defendant himself had no subjective expectation of privacy in the apartment, having stated that he was merely there to use the phone, and that, even if he had, his was not one of those "expectations of privacy which we all share".... Society is not prepared to recognize the expectation of privacy now raised in this case as either legitimate or reasonable.

*United States v. McNeal,* 735 F.Supp. 738, 742 (N.D. Ohio 1990) (citation omitted). This result was supported by the discovery, after McNeal's arrest, that he resided at 1836 Van Buren Avenue, Cleveland Heights, Ohio with Patricia Moore, many miles from the King Kennedy Estates, and upon his assertion, at the time of his arrest that, "The girl has nothing to do with this. I don't stay here. I just stopped to use the telephone."

Accordingly, since the district court concluded that the appellant had no reasonable expectation of privacy in Ward's apartment, he was afforded no Fourth Amendment protection against an improper warrantless entry into her apartment because he was not the individual aggrieved or the victim of an illegal or improper entry or search of her residence, if in fact it oc-

curred. Having decided that McNeal had no "standing" to challenge the agents' entry into Ward's apartment, the district court correctly concluded that "Because the Court holds that defendant may not challenge the search of Ward's apartment, it need not determine whether the officers had probable cause to believe that a crime was being committed in the apartment or that exigent circumstances existed." *McNeal,* 735 F.Supp. at 743. The court's "standing" resolution was dispositive of the appellant's motion to suppress.

■ The Supreme Court has directed that *a person in possession* of contraband seized during an illegal search of a private place has not necessarily been subjected to a Fourth Amendment deprivation. *United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980). Reviewed against existing fundamental mandates of the Court, appellant's arguments in the instant action are neither consistent nor convincing. Both the appellant's and the dissenting opinion's analyses have confused Fourth Amendment distinctions between constitutional rights that afford protection against entry and search of a *private place,* and those that afford protection *to a person* against illegal arrest.

Initially, it is beyond peradventure that the constitutional legality of an entry and search of a *private place* and the *arrest or detention* of an *individual* are subject to probable cause justifications by an appropriate judicial officer either before or after the fact. In the first instance, warrants to enter and search a private place or to arrest a person must be supported by appropriate affidavits of probable cause evaluated and issued *before the event occurs.* A warrantless entry and search of a private place or a warrantless arrest must be justified *after the event* by a judicial review of probable cause for the official action. However, it is equally settled that protected constitutional rights that attach to an entry and search of a private place differ from those that protect against the detention of an individual's person.

A Fourth Amendment constitutional protection against a warrantless entry and search safeguards *against unjustifiable official intrusion* into a *private place* without probable cause of sufficient weight to support a belief *that a crime is being committed therein.* In contrast, a warrantless arrest must be supported by the existence of probable cause of sufficient weight to support a belief that the *individual detained committed a criminal offense.* Thus, the constitutional protection of the Fourth Amendment against a warrantless arrest insures against an unreasonable seizure of an individual's person. Both Fourth Amendment rights to protection are *personal and may not be vicariously asserted.*

As indicated, subsequent to a suppression hearing during which various witnesses, other than the appellant, including Ward, testified, the trial court concluded that McNeal had no reasonable expectation of privacy in Ward's apartment. Consequently, he had no standing to challenge the legality of the entry nor to invoke the Fourth Amendment safeguard against an unjustifiable official intrusion into the privacy of Ward's apartment either on his own or Ward's behalf. The trial court's decision *was expressly anchored in credibility evaluations of* witnesses who testified during the suppression hearing, and accordingly, is beyond appellate review. *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *see Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989), *aff'g,* 842 F.2d 825 (6th Cir.1988); *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 498–99, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984); *Batts v. NLT Corp.,* 844 F.2d 331, 336 (6th Cir.1988); *Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461 (6th Cir.1988), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989); *Watson v. Fort Worth Bank & Trust,* 798 F.2d 791, 798–99 (5th Cir.), *reh'g denied, en banc,* 802 F.2d 455 (5th Cir. 1986), *cert. granted, in part,* 483 U.S. 1004, 107 S.Ct. 3227, 97 L.Ed.2d 734, *motion denied,* 484 U.S. 893, 108 S.Ct. 224, 98 L.Ed.2d 183 *motion denied,* 484 U.S. 961, 108 S.Ct. 448, 98 L.Ed.2d 388 (1987), *and vacated,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

Mindful of the notorious reputation of the King Kennedy housing project in Cleveland, Ohio, as a high crime area with a tremendous amount of violence, shootings, assaults, homicides and substantial drug trafficking, the trial court stated:

> The Court notes at the outset that, because of the inconsistencies between her testimony on the stand and what she told the police on December 5 in a written statement, the way she changed her story in mid-sentence, the fact that, on December 5, 1989, she did not even know the defendant's last name and yet claimed that they had been lovers since September or October, and her demeanor generally on the stand, it does not find Tina Ward a credible witness. Apart from the facts that were corroborated by other witnesses, e.g., that the officers entered the apartment without her consent, that she asked whether they had a search warrant, and that there were others present in the apartment at the time, *the Court accords no weight to Ms. Ward's testimony.* The defendant presented no other witnesses and then rested for the purpose of the motions.

*McNeal,* 735 F.Supp. at 740 (emphasis added) (footnote omitted).

Accordingly, if the appellant had no reasonable expectation of privacy in Ward's apartment, his only remaining redress was to invoke the distinctively different Fourth Amendment constitutional prohibition against illegal *detention of his person* by proving that his warrantless arrest while on the premises of a third party wherein he had no expectation of privacy was without probable cause of sufficient weight to support a belief that *he had committed a crime*—legality of entry into Ward's apartment notwithstanding. It appears, however, that the appellant did not properly seek to invoke this later Fourth Amendment protection at the trial level. This issue, if appellant's assignments of error are most liberally construed, was

unartfully advanced for the first time before this court upon appeal. Assuming arguendo that appellant did seek to invoke his Fourth Amendment protection against the illegal detention of his person by proving that his warrantless arrest upon the premises of a third party was without probable cause, his appeal on that issue would be equally misconceived and would fail for the reasons hereinafter discussed.

Briefly summarized, the issue presented to the district court by the appellant's motion to suppress was his "standing" to question the official warrantless entry into Ward's apartment at the King Kennedy Estates in Cleveland, Ohio. If he had a reasonable expectation of privacy in the apartment and the warrantless entry of the premises was without probable cause of sufficient weight to support a belief that a crime was being committed therein then, in that event, he could invoke the Fourth Amendment constitutional protection against illegal entry into Ward's premises and seek to suppress the evidence confiscated from his person as the "contaminated fruit of a poisonous tree."

The trial judge, from her personal observations of the witnesses who testified during the suppression hearing, expressly assigned greater credibility to the testimony of the government's witnesses than to the testimony of Ward. Having observed the behavior of the witnesses on the witness stand; their manner of testifying; the reasonableness and probability of their testimony; their candor or lack of candor; their interest and bias; the circumstances surrounding their testimony, together with all of the other tests of truthfulness that are unique to the factfinder and only the factfinder, be it judge or jury, the trial judge arrived at a factual finding to support her legal conclusion that McNeal was nothing more than a "casual transient visitor" on the night in controversy. The district court's factual finding anchored in credibility assessments derived from personal observations of the witnesses is beyond appellate reversal unless those factual findings

are clearly erroneous. Upon its express credibility and factual finding, the trial court decided as a matter of law that McNeal's expectation of privacy in Ward's apartment did not rise to the level of one that society was prepared to recognize as reasonable.

In considering the appellant's first assignment of error it should be noted that the "automatic standing" conferred by *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).[3] upon defendants charged with a crime of possession to challenge the legality of an entry and search of another's private place without first proving a reasonable expectation of privacy in the premises searched, has been explicitly overruled by the Supreme Court in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978):

> Today we hold that defendants charged with *crimes of possession may only claim* the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of *Jones v. United States, supra,* is therefore overruled.

> \* \* \* \* \* \*

> We are convinced that the automatic standing rule of *Jones* has outlived its usefulness in this Court's Fourth Amendment jurisprudence. The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have *not* been violated. We are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of *Alderman* that the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights.

*Salvucci,* 448 U.S. at 85, 89, 100 S.Ct. at 2549, 2551 (emphasis added).

---

**3.** Under the "automatic standing" rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), any person charged with a possessory offense could challenge the search in which incriminating evidence was confiscated.

As we stated in *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969), "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *See Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); *Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968); *Wong Sun v. United States,* 371 U.S. 471, 492, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963); *cf. Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961); *Gouled v. United States,* 255 U.S. 298, 403, 41 S.Ct. 261, 263, 65 L.Ed. 647 (1921). A person who is aggrieved by an *illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his* Fourth Amendment rights infringed. *Alderman, supra,* 394 U.S. at 174, 89 S.Ct. at 966. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425 (emphasis added).

Accordingly, to support his reasonable expectation of privacy in Ward's apartment before this court, the appellant has relied exclusively upon Ward's testimony during the suppression hearing that she and McNeal were lovers, that "he was her man," and that one of the three keys found in his possession after he was arrested was for Ward's apartment.

The trial court assessed Ward's testimony against the government's proof which disclosed that on the night of his arrest, McNeal stated that, "The girl has nothing to do with this. I don't stay here. I just stopped to use the telephone"; that he gave his place of residence as 1836 Van Buren Avenue in East Cleveland where he lived with Patricia Moore; that his residence of record was listed as 896 Yellowstone Avenue, Cleveland Heights, both of which addresses were located several miles away from King Kennedy apartments; and that the two additional keys in his possession at the time of his arrest were for two separate apartments in King Kennedy which were leased to separate tenants other than Ward.[4]

Aware of the notorious reputation of the King Kennedy housing project as a high crime area and a drug distribution center and judicially cognizant of the multiple-base operations adopted by major drug distributors to evade detection, the trial judge assigned greater credibility to the government's evidence than to Ward's testimony:

The Court notes at the outset that, because of the inconsistencies between her testimony on the stand and what she told the police on December 5 in a written statement, the way she changed her story in mid-sentence, the fact that, on December 5, 1989, she did not even know the defendant's last name and yet claimed that they had been lovers since September or October, and her demeanor generally on the stand, it does not find Tina Ward a credible witness. Apart from the facts that were corroborated by other witnesses, e.g., that the officers entered the apartment without her consent, that she asked whether they had a search warrant, and that there were others present in the apartment at the time,

4. In *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court in a narrow decision suggested that an "overnight guest" could acquire a legitimate expectation of privacy in the residence of a third party. The Court, however, *expressly rejected* a factor-counting test in disposing of the issue as "too complex", and suggested that a defendant's possession of a key to the private premises of a third party viewed in isolation was not conclusive evidence of a reasonable expectation of privacy. *Id.* 110 S.Ct. at 1688. *Olson* directed that the issue be decided on a case by case basis, always mindful of the fundamental principal that a subjective expectation of privacy is "legitimate" only if it is "one that society is prepared to recognize as 'reasonable.'" *Rakas,* 439 U.S. at 128, 99 S.Ct. at 421 (quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring)).

*the Court accords no weight to Ms. Ward's testimony.* The defendant presented no other witnesses and then rested for the purpose of the motions. *McNeal,* 735 F.Supp. at 740 (emphasis added) (footnote omitted).

The trial court's conclusions of law predicated upon findings of fact anchored in credibility assessments are invulnerable to appellate review unless clearly erroneous:

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, *can virtually never be clear error.*

*Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *see Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989), *aff'g,* 842 F.2d 825 (6th Cir.1988); *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 498–99, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984); *Batts v. NLT Corp.,* 844 F.2d 331, 336 (6th Cir.1988); *Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461 (6th Cir.1988), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989); *Watson v. Fort Worth Bank & Trust,* 798 F.2d 791, 798–99 (5th Cir.), *reh'g denied, en banc,* 802 F.2d 455 (5th Cir. 1986), *cert. granted, in part,* 483 U.S. 1004, 107 S.Ct. 3227, 97 L.Ed.2d 734, *motion denied,* 484 U.S. 893, 108 S.Ct. 224, 98 L.Ed.2d 183, *motion denied,* 484 U.S. 961, 108 S.Ct. 448, 98 L.Ed.2d 388 (1987), *and vacated,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

This court concludes that the district court's credibility determinations, its findings of fact and conclusions of law,

> that the facts adduced at the hearing reveal that the defendant himself had no subjective expectation of privacy in the apartment, having stated that he was merely there to use the phone, and that, even if he had, his was not one of those "expectations of privacy which we all share".... Society is not prepared to

recognize the expectation of privacy now raised in this case as either legitimate or reasonable.

*McNeal,* 735 F.Supp. at 742, were not clearly erroneous and its disposition is hereby affirmed.

Having been foreclosed from invoking the Fourth Amendment safeguards that protected *Ward's personal interest in the privacy of her apartment* and *her possessions* from unjustifiable official intrusion, appellant was without standing to interpose the defense vicariously on his own behalf. Both the appellant's and the dissenting opinion's refusal to recognize the distinctions between Fourth Amendment protection against official intrusions into an individual's *privacy* by illegal entry and search, and the patently different Fourth Amendment protection against the illegal *arrest and detention of his person* is reflected by the unprecedented argument that McNeal's warrantless arrest upon Ward's premises was illegal because the officers were without probable cause *before entering* her apartment of sufficient weight to support a belief that *he had committed a crime.* The argument goes beyond the "automatic standing" rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), repudiated by the Supreme Court, which permitted *any person* charged with a possessory offense to *challenge* the entry and search of a private place wherein contraband was seized from his person by proving a reasonable expectation of privacy in the private place in controversy.

Appellant and the dissenting opinion seek a pronouncement that would *create an irrebuttable presumption that any person* confronted upon the premises of a third party, without additional proof, would have an inherent *expectation of privacy in that third person's private place,* together with the attendant Fourth Amendment constitutional protection against entry and search of said third party premises. Research discloses no support for this novel legal proposition.

Existing legal authority which has addressed the issue in *Steagald v. United*

*States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *United States v. Watson,* 423 U.S. 411–23, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), and *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), evolved from challenges asserted by defendants charged with possessory crimes who sought Fourth Amendment constitutional protection from warrantless entry into and search of either their own private premises or the private premises of another where it had been *determined,* by concession or adjudication, that such defendant had a reasonable expectation of privacy in those premises, as distinguished from a defendant whose claim was contingent only upon the *use of evidence confiscated as a consequence of an illegal entry and search* of another's private premises where it had been determined by concession or judicial decree that *he had no reasonable expectation of privacy in those premises* and was, accordingly, not the aggrieved party of the entry and search. The appellant's and dissent's suggestion that probable cause of sufficient weight to support a belief that he had committed a crime, to purge his warrantless arrest upon Ward's premises, had to exist *before agents entered Ward's apartment* would relieve appellant of his initial burden of proving an expectation of privacy in Ward's premises as a condition precedent to challenge the warrantless entry and search thereof and would shift that burden to the government by requiring justification for the entry into her apartment as a condition precedent to confronting McNeal. This analogy does not comport with the Supreme Court's pronouncements in *Rakas, Salvucci,* and *progeny.*

McNeal's and the dissenting opinion's argument to the contrary, probable cause for appellant's arrest while in Ward's apartment must be judged upon the totality of the information available to the government agents when they initially confronted and observed him *after* entering Ward's apartment, not *before* gaining entry into those premises as urged by appellant and the dissent. *Illinois v. Gates,* 462 U.S.

213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *McCray v. Illinois,* 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967); *Draper v. United States,* 358 U.S. 307, 311–13, 79 S.Ct. 329, 332–33, 3 L.Ed.2d 327 (1959).

The district court, having determined that defendant did not have "standing" to contest the lawfulness of his arrest in Ward's apartment because he had no reasonable expectation of privacy in the apartment, correctly concluded that, "Because the Court holds that the defendant may not challenge the search of Ms. Ward's apartment, it need not determine whether the officers had probable cause to believe that a crime was being committed in the apartment or that exigent circumstances existed." *McNeal,* 735 F.Supp. at 743; *see United States v. Sangineto–Miranda,* 859 F.2d 1501, 1510 (6th Cir.1988).

Having correctly applied the law to its factual finding anchored in credibility determinations that are beyond appellate review because those findings are neither internally inconsistent, facially implausible nor contradicted by extrinsic evidence, and consequently, not clearly erroneous, the district court's decision was dispositive of the only issue presented and tried during the suppression hearing. *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *see Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989), *aff'g,* 842 F.2d 825 (6th Cir.1988); *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Batts v. NLT Corp.,* 844 F.2d 331 (6th Cir.1988); *Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461 (6th Cir.1988), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989); *Watson v. Fort Worth Bank & Trust,* 798 F.2d 791 (5th Cir.), *reh'g denied, en banc,* 802 F.2d 455 (5th Cir.1986), *cert. granted, in part,* 483 U.S. 1004, 107 S.Ct. 3227, 97 L.Ed.2d 734 *motion denied,* 484 U.S. 893, 108 S.Ct. 224, 98 L.Ed.2d 183, *motion denied,* 484 U.S. 961, 108 S.Ct. 448, 98 L.Ed.2d 388 (1987), *and*

*vacated*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

However, after according appellant the widest latitude of consideration by addressing his second assignment of error, this court concludes that his reasoning in support thereof adopted by the dissenting opinion is equally without merit.

In considering appellant's second assignment of error it should be noted that the dissent premises its support of that assigned error entirely upon a totally convoluted interpretation of the trial court's disposition that materially changes the lower court's decision into the misstatement of the law the dissent characterizes it to be with the following editorial comment:

> The district court's conclusion that if a defendant lacks a reasonable expectation of privacy in the residence in which he is arrested, he has no standing to contest whether his arrest was on probable cause is a misstatement of the law.

The lower court opinion affords no direct or implicit basis for the dissenting opinion's material departure from the trial court's explicit substantive language. To the contrary, in footnote seven of its opinion, the district court remarked, "Of course, the defendant may challenge the search of himself and his personal belongings." *McNeal*, 735 F.Supp. at 742 n. 7 (citations omitted); *see Rakas*, 439 U.S. at 142 n. 11, 99 S.Ct. at 430 n. 11.

In the instant case, appellant was arrested in Ward's apartment where, the trial court ruled, he had no reasonable expectation of privacy. Although, as a result of that ruling, he was foreclosed from suppressing the evidence confiscated from his person as the "contaminated fruit of the poisonous tree", i.e., an illegal entry and search of Ward's apartment because he was without an expectation of privacy in her apartment, he was, as the district court correctly observed, nevertheless *free to assert his separate personal* Fourth Amendment constitutional right *to challenge his warrantless arrest and incidental confiscation of contraband from his person* by asserting *that the warrantless detention and search of his person while in her premises was without probable cause* of sufficient weight to support a belief that *he had committed a crime*. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).[5]

 Without the Fourth Amendment constitutional protection against illegal entry and search of Ward's apartment, appellant's encounter with law enforcement authorities *after* they had entered Ward's premises must be judged within the context of a confrontation between citizen and law enforcement authority in a public place. Because appellant may not vicariously challenge the lawfulness of the official entry into Ward's apartment, he may not charge that the search of his person—if otherwise legal—was the vitiated result of an illegal entry.

Probable cause of sufficient weight to support McNeal's warrantless arrest in Ward's apartment must be assessed by evaluating the *totality* of the information available to the officers when they first observed appellant *after* entering Ward's apartment. *Illinois v. Gates*, 462 U.S. at 230–31, 103 S.Ct. at 2328; *McCray v. Illinois*, 386 U.S. at 304, 87 S.Ct. at 1059,

---

5. In *Ybarra v. Illinois*, 444 U.S. 85, 87, 100 S.Ct. 338, 340, 62 L.Ed.2d 238 (1979), police obtained a warrant to search a bar and one of its employees, a bartender whom they had probable cause to believe was distributing heroin on the premises. When the officers executed the warrant, they frisked each of the bar's patrons, and in the process found contraband on the person of plaintiff Ybarra. *Id.* at 88, 100 S.Ct. at 341. The Supreme Court determined that, because a search of Ybarra was not within the scope of the search warrant, he could not have been subjected to a limited search of his person for concealed weapons unless the officers, *upon observ-*

*ing him inside the bar*, formed a reasonable suspicion that Ybarra was armed and imminently dangerous. As it were, however, Ybarra's observable conduct was entirely unsuspicious, because his "hands were empty, [he] gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening." *Id.* at 93, 100 S.Ct. at 343. McNeal's behavior, in stark contrast to Ybarra's, was very threatening and gave every indication that he was, as the informant warned, armed and dangerous.

*Draper v. United States*, 358 U.S. at 311–13, 79 S.Ct. at 332–33.[6] This would include the information supplied to the agents *before entering* the premises by an informant who had provided reliable information in the past as corroborated by the agents' own initial observation of McNeal retreating into a rear bedroom of Ward's apartment and his confrontation therein.[7] *McCray*, 386 U.S. at 304, 87 S.Ct. at 1059 (information from an informant who had provided reliable information in the past, verified by police officers' direct observations, constituted probable cause to make warrantless arrest); *Draper*, 358 U.S. at 311–13, 79 S.Ct. at 332–33 (same).

The operative facts concerning the circumstances that ultimately resulted in McNeal's warrantless arrest and confiscation of contraband from his person are not in controversy. Briefly, a review of those facts disclosed that a reliable informant told the officers that a heavily-armed and dangerous drug dealer named Bill, "who was a killer," was in apartment 104N with a substantial quantity of drugs. As the informant directed the officers' attention to the location of apartment 104N, they observed a person in the window of the unit. The officers first encountered McNeal after entering Ward's apartment as he was retreating into a rear bedroom in an effort to conceal himself. Upon confronting him in the bedroom, he was backing away, holding a bag in his right hand. In a coordinated single movement, McNeal transferred the bag to his left hand and with his freed right hand reached for his left armpit, for what the officers believed to be a concealed weapon. The officers ordered him to stop and raise his arms above his head. He complied immediately. At that juncture, the officers reasonably suspected that McNeal was armed and dangerous and conducted a limited protective search of his person for concealed weapons. " 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons.' " *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (quoting *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968)).

The district court credited agent Hartman's belief, predicated upon information received from his reliable informant before entering Ward's apartment as corroborated by his own observations of McNeal therein, that appellant was armed and dangerous, which reasonable suspicion justified a limited protective search of his person for concealed weapons.[8] Information from a

---

6. The officers in *McCray* testified that the informant, who had observed the defendant selling drugs, had provided them with reliable information in the past. Upon the basis of this information,

 along with the officers' personal observations of the petitioner, the court was fully justified in holding that at the time the officers made the arrest the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

 *Id.* at 304, 87 S.Ct. at 1059 (quotations and citations omitted). Similarly, in *Draper*, the officers, through the hearsay tip from a known informant who had provided reliable information in the past corroborated by their own observations, had probable cause and reasonable grounds to believe that the defendant was committing a crime. *Draper*, 358 U.S. at 314, 79 S.Ct. at 333; *see Illinois v. Gates*, 462 U.S. 213, 242–43, 103 S.Ct. 2317, 2334–35, 76 L.Ed.2d 527 (1983).

7. The sufficiency or insufficiency of the weight of the information supplied by the reliable informant *when received in isolation* as support for justifiable probable cause for his warrantless arrest is of no consequence and does not constitute a viable issue under the circumstances of the instant case.

8. "In this case the informant's tip and Inspector Hartman's belief that the defendant was about to draw his gun constituted reasonable suspicion sufficient to support the *Terry* stop and frisk of the defendant. Once the gun was found, the police were authorized to arrest the defendant and perform a *Chimel* search of the blue bag because it was within reach of the defendant and from it he might have obtained either a weapon or something that could have been used as evidence against him. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)." *United States v. McNeal*, 735 F.Supp. 738, 742 n. 7 (N.D.Ohio 1990).

known, reliable informant is sufficient to support the reasonable suspicion to conduct a limited search of a person for concealed weapons, *Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. at 1924, even if the unnamed informant is "anonymous."[9] The initial search disclosed a fully loaded .45 caliber semi-automatic pistol and a quantity of drugs in the bag he had dropped onto the floor, justifying McNeal's immediate arrest because the agents had probable cause to believe he had committed a crime. The search incident to his arrest conducted of his person and the bag in his possession disclosed additional quantities of cocaine, $4,768.00 in cash, and a pager.

In conclusion, the district court's disposition denying the appellant's reasonable expectation of privacy in Ward's apartment and the suppression of damaging evidence confiscated from his person while inside her premises as the "contaminated fruit of the poisonous tree", i.e., an illegal warrantless search, is affirmed.

If, however, this court considers appellant's second assignment of error, then in that event, this court for the reasons already discussed:

1. reaffirms the existing precedential distinction between a Fourth Amendment constitutional protection against illegal warrantless *entry* into and *search* of a *private place* without a showing of a *probable cause* of sufficient weight to support a reasonable *belief that a crime is being committed inside the premises* and the Fourth Amendment protection against *illegal warrantless arrest* of a *person* without probable cause of sufficient weight to support a belief that *the person had committed a crime*—a difference that the appellant and the dissenting opinion have failed to recognize in their interchangeable, interlocking applications of these different legal theories advanced in support of appellant's assignments of error;

2. reaffirms the existing precedential pronouncements that a person in possession of contraband confiscated during an illegal search of a private place has not necessarily been subject to a Fourth Amendment infringement where, as in the instant case, the defendant (McNeal) was incidentally aggrieved by an illegal warrantless entry into and search of a third person's premises (Ward's apartment) only through the introduction of highly prejudicial evidence confiscated from his person while on said premises—(a fully loaded semi-automatic pistol, a substantial quantity of cocaine, $4,768 cash and a pager);

---

9. Appellant's and the dissent's inferences to the contrary, an unverified tip by a known informant who has provided reliable information in the past alone carries sufficient indicia of reliability to justify a forcible *Terry* stop. *Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. at 1924. Further, such a tip, whether based on hearsay or the informant's direct observation when corroborated by the police officers' direct observations, is a sufficient basis for probable cause to arrest. *McCray*, 386 U.S. at 304, 87 S.Ct. at 1059; *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960); *Draper*, 358 U.S. at 311–13, 79 S.Ct. at 332–33. There is no requirement that law enforcement agents inquire into the source of the informant's information. Furthermore, the identity of the informant need not be disclosed to verify reliability:

[T]his court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulso-

ry disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need not disclose an informer's identity in applying for an arrest or search warrant.

*McCray*, 386 U.S. at 305, 311, 87 S.Ct. at 1059, 1062; *Jones*, 362 U.S. at 271, 80 S.Ct. at 736.

The appellant's and dissenting opinion's contention that the police must inquire into the background of the informant to discover if he has been involved in past crimes in order to determine reliability is unprecedented. To the contrary, an informant's history in similar activity may enhance his reliability because of personal knowledge acquired from his criminal experiences. *United States v. Hensley*, 469 U.S. 221, 234, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985). Moreover, a standard that leaves virtually no place for anonymous citizen informants is not required by the Fourth Amendment. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

3. affirms the district court's refusal to recognize McNeal's asserted expectation of privacy in Ward's apartment and denial of his motion to suppress evidence confiscated from his person as the "contaminated fruit of a poisonous tree," i.e., an alleged illegal warrantless entry and search, because he was without a Fourth Amendment constitutional right to challenge the legality of the entry and search;

4. reaffirms the existing precedent that a warrantless arrest of a defendant while on the premises of a third party for a possessory crime, must be supported by probable cause of sufficient weight to justify a belief that the *defendant has committed a crime.*

5. reaffirms existing legal precedent that an encounter between law enforcement authorities and a defendant charged with a possessory crime while on the private premises of a third party wherein he has no reasonable expectation of privacy must be judged within the parameters of a confrontation between citizen and law enforcement authority in a public place;

6. reaffirms the existing precedential distinction between a *"reasonable suspicion"* necessary to support a limited search of a person for concealed weapons to determine if a *defendant is armed and dangerous* and *"probable cause"* to support a *warrantless arrest* of an individual upon the *belief that he has committed a crime.* A difference that the appellant and the dissenting opinion have erroneously failed to recognize and apply in advancing appellant's second assignment of error;

7. reaffirms existing legal precedent that the weight of the evidence required to support a *reasonable suspicion that a defendant is armed and dangerous* must be judged by the *totality* of the information available to government agents *when confronting a defendant* inside the premises of a third-party wherein the defendant has no reasonable expectation of privacy and not, as posited by the appellant and the dissenting opinion, limited to the information available to them before entering the premises:

(a). the information would include that conveyed to the officers before entering Ward's apartment by an informant who had provided the officers with reliable, accurate information concerning drugs and weapons in the past, which information had resulted in the recovery of weapons, drugs and the arrests of a number of criminal defendants, i.e., that a drug dealer named "Bill" who was a heavily-armed, dangerous killer was in Ward's apartment with a substantial quantity of drugs;

(b). as corroborated by their own observations after entering Ward's premises of a person later identified as Bill McNeal retreating along a hallway in an effort to conceal himself in her bedroom who, upon confrontation inside the bedroom, was backing away from the officers with a bag in his right hand which in a single coordinated movement, he transferred to his left hand and with his free right hand reached for his left armpit where a limited search for concealed weapons disclosed a fully loaded semi-automatic pistol;

8. reaffirms existing legal precedent that a warrantless arrest of a defendant upon the private premises of a third-party wherein the defendant is without an expectation of privacy, probable cause of sufficient weight to support a reasonable belief that the defendant has committed a crime must also be judged by evaluating the totality of the information available to the officers executing the warrantless arrest at the time of the arrest; and not limited to the information available to them before they entered the private place of a third party as erroneously posited by the appellant and the dissenting opinion:

(a). in the instant case, the information would include all of 7(a) and (b) above, together with the fully-loaded 45–caliber semi-automatic revolver dis-

closed by the limited search of McNeal's person for concealed weapons, the substantial quantity of cocaine he dropped to the floor when reaching for his left armpit where his weapon was holstered, the $4,768 cash and pager taken from his person as a result of a more thorough search conducted incidental to his arrest—all of which information supported a reasonable belief that appellant had committed a crime.

Accordingly, appellant's second assignment of error is dismissed.

CONTIE, Senior Circuit Judge, dissenting.

## I.

I disagree with the majority opinion, because I believe it eviscerates the protection of the Fourth Amendment that an arrest shall be based on probable cause. The majority renders this constitutional guarantee meaningless by making the following three assertions—assertions for which I can find no authority: (1) if a defendant lacks an expectation of privacy in the place where he is arrested, he lacks standing to contest whether his arrest was based on probable cause; (2) a *Terry* stop, based on the reasonable suspicion provided by an informant's tip, may take place in a private residence even though the police have not gained lawful entry into the residence; and (3) under the "totality of the circumstances" test of *Illinois v. Gates,* the reasonable suspicion provided by an informant's tip may be corroborated with observations the police make after unlawfully entering a private residence in order to

provide the degree of probable cause needed to make an arrest. I will deal with each of these propositions in turn.

### A. Standing

I disagree with the district court and majority's conclusion that if a defendant does not have a reasonable expectation of privacy in the premises in which he is arrested, he lacks standing to contest whether his arrest was based on probable cause.

At the conclusion of its opinion, the district court stated, "Because the Court holds that the defendant may not challenge the search of Ms. Ward's apartment, it need not determine whether the officers had probable cause to believe that a crime was being committed in the apartment or that exigent circumstances existed." *United States v. McNeal,* 735 F.Supp. 738, 743 (1990).[1] The majority opinion states that the district court's " 'standing' resolution [is] dispositive of the appellant's motion to suppress." I disagree. The district court and majority fail to understand that a defendant does not need an expectation of privacy in the place where he is arrested in order to give him standing to argue that his arrest was not based on probable cause. An arrest must *always* be based on probable cause, whether it occurs in a public place, in the defendant's home, or in a third party's residence in which the defendant lacks a reasonable expectation of privacy. *See United States v. Watson,* 423 U.S. 411, 423–24, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980); *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. at 1687 n. 1, 109 L.Ed.2d 85.[2]

1. The district court was correct in stating that a reasonable expectation of privacy in Tina Ward's apartment would be necessary for appellant to contest whether exigent circumstances justified a warrantless arrest. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990). However, in *Olson,* the Supreme Court did not hold that a defendant needs an expectation of privacy in the place where he is arrested in order to contest whether his arrest was based on probable cause. In *Olson,* the Supreme Court stated that the appellate court had not reviewed the trial court's determination that the police had probable

cause for the arrest. Therefore, the Supreme Court judged the case on the assumption that there was probable cause. Id. 110 S.Ct. at 1687 n. 1.

2. Contrary to the majority's assertion, I am not seeking a pronouncement that would create an irrebuttable presumption that any person confronted upon the premises of a third party would have an inherent expectation of privacy in the third person's private place. I am merely arguing that an arrest must be based on probable cause no matter where it occurs, which is not a novel or an unprecedented argument. There is no pronouncement by the Supreme

Even if appellant McNeal lacks a reasonable expectation of privacy in Tina Ward's apartment, he still has "standing" to contend that the officers lacked probable cause to arrest him. Before the district court, appellant argued that his arrest violated the Fourth Amendment because the informant's tip did not provide probable cause to arrest him.[3] Moreover, the evidence he sought to suppress was the evidence found during the search of his person and property, not the search of Tina Ward's apartment. As the Supreme Court made clear in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), an expectation of privacy in a third person's dwelling is necessary to give standing to contest the validity of the search of the *premises*, but is not necessary to contest the "lawfulness of the seizure of evidence or the search [of the *person* ] if [his] own property [is] seized during the search." *Id.* at 142 n. 11, 99 S.Ct. at 430 n. 11. One does not lose one's own Fourth Amendment rights to contest the search of one's person or property or to argue that an arrest is not based on probable cause merely because one is arrested in a third party's residence. Thus, even if appellant McNeal were only a casual visitor in Tina Ward's apartment and did not have standing to contest the search of the *premises*, he has standing to contest whether or not there was probable cause to believe that a crime was being committed, which would warrant the arrest and detention of his *person*.

### B. *Terry* stop

I disagree with the majority's conclusion that a *Terry* stop may take place in a private residence without the police first obtaining lawful entry into the residence. The district court in a footnote acknowl-edged that appellant McNeal could challenge the search of himself and his personal belongings, but concluded that the informant's tip gave reasonable suspicion to conduct a "*Terry* stop" to detain and frisk him. *McNeal*, 735 F.Supp. at 742 n. 7.[4] The district court and majority failed to recognize that a *Terry* stop based on the reasonable suspicion provided by an informant's tip is permissible inside a private residence only if the police first gain lawful entry into the residence. The reasonable suspicion standard was developed in the context of *street encounters* between citizens and police officers to justify a stop and frisk for investigatory purposes when a person appears to be engaging in suspicious activity. *Terry v. Ohio*, 392 U.S. 1, 20–23, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968). In the present case, the district court and the majority attempt to transfer a doctrine developed in the context of police encounters with citizens in *public* places—the "*Terry* stop doctrine"—to a *private* residence. The majority states that under the Fourth Amendment, the reasonable suspicion provided by an informant's tip may be used to justify a *Terry* stop within a private residence as long as the person the police wish to stop and frisk does not have a reasonable expectation of privacy in the premises. I do not agree. The Supreme Court has never held that after an unjustified, warrantless entry into a private residence, a *Terry* stop may be conducted based on reasonable suspicion provided by an informant's tip. The Supreme Court developed the *Terry* stop doctrine and the reasonable suspicion standard in the context of public encounters between police and citizens where no third party privacy rights would be infringed upon. I

---

Court in *Rakas, Salvucci* and progeny, that before contesting an arrest that takes place in a private residence, a defendant must first prove he has an expectation of privacy in that residence.

**3.** Contrary to the majority's assertion, defendant raised this issue at the trial court level. See Transcript of Proceeding Before the ... [District Court] on Friday, April 20, 1990, Record Entry No. 43 at pp. 62–65.

**4.** I am not attempting to distort the district court's opinion, as the majority asserts. I disagree with two separate conclusions of the district court. The first conclusion that I disagree with is that if a person lacks a reasonable expectation of privacy in the place where he is arrested, there is no need to determine if the arrest was based on probable cause. The second conclusion with which I disagree is that the search of appellant's person and property was justified as a *Terry* stop.

believe that the *Terry* stop doctrine is limited in its application to these *public* encounters and that the only time a *Terry* stop is permissible within a private residence is when the police are already lawfully on the premises.

If appellant McNeal had been in the type of public place in which the *Terry* stop doctrine has traditionally been applied, perhaps the informant's tip would have provided reasonable suspicion to stop and frisk him. *See Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). However, appellant McNeal was not in a public place, but in a private residence, and he had never been observed by the police engaging in any suspicious criminal activity. Therefore, the entire rationale for making a *Terry* stop based on the informant's tip simply does not apply in the present case. The majority seeks to obliterate the walls of Tina Ward's apartment, indicating that a private residence is no different than a bar, airport, or bus terminal for the purpose of making a *Terry* stop if the suspect does not have a reasonable expectation of privacy in the premises. There is absolutely no authority for this extreme position. To the contrary, the court in *United States v. Flippin*, 924 F.2d 163, 166 (9th Cir.1991) stated, "When the police have *lawfully entered* a dwelling and have a reasonable suspicion that a suspect is armed, a *Terry* pat down for weapons is permissible" (emphasis added). In *Flippin*, the court found that the police had a legitimate right to enter based on consent. *Id.* at 165–66. In contrast, in the present case, the officers pushed their way into Tina Ward's apartment without her consent and in spite of the fact that she tried to prevent their entry by demanding to see a warrant. Implicit in the reasoning of *Flippin* is that a *Terry* pat down for weapons would not have been permissible unless lawful entry into the private residence had first been obtained. *See also, United States v. Salazar*, 945 F.2d 47 (2nd Cir.1991) (a *Terry* stop of a visitor to a private apartment was permissible because police were *lawfully on the premises* when he arrived).

The Supreme Court has never extended the *Terry* doctrine based on the reasonable suspicion standard within the confines of a private residence except when lawful entry into the residence has already been obtained. In *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the Supreme Court stated that in executing an arrest warrant on the defendant, a protective sweep of the residence in which he was arrested could be made based on reasonable suspicion. *Id.* 110 S.Ct. at 1098. However, in *Buie*, the police were lawfully on the premises because an arrest warrant based on probable cause had already been obtained. *Id.* at 1095. In the present case, I believe a search of appellant McNeal's person and belongings is permissible only if the police had probable cause to enter the apartment to arrest him, as was the case in *Buie*. In other words, the reasonable suspicion that perhaps would be sufficient to make a *Terry* stop in a *public* place cannot be used to justify the seizure of a suspect, who is in a *private* residence, unless legal entry into the residence is first obtained.

The majority's conclusion that a *Terry* stop may be made in a private residence as long as the defendant lacks a reasonable expectation of privacy in the residence is inconsistent with this court's holding in *United States v. Prior*, 941 F.2d 427 (6th Cir.1991) in which Judge Merritt held that a seizure had correctly been characterized as a *Terry* stop because it occurred in a *public* area of a housing project and the police had observed the suspect engaging in suspicious behavior while in the *public* area. This opinion's emphasis on the public nature of the area in which the defendant was seized would be unnecessary if it were true, as the majority contends, that it does not matter whether a *Terry* stop occurs in a public or a private place if the suspect lacks a reasonable expectation of privacy in the area where he is seized.

In the Supreme Court's development of the *Terry* stop doctrine and reasonable suspicion standard, the determining factor was the fact that the encounter between police and citizen occurred in a public place *per se*. The Supreme Court stated in *Terry*,

"But we deal here with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officers *on the beat*—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure." 392 U.S. at 20, 88 S.Ct. at 1879 (emphasis added). In the present case, the police made no on-the-spot observations of appellant while on the beat. Even if appellant McNeal lacks a reasonable expectation of privacy in Tina Ward's apartment, this lack does not turn Tina Ward's apartment into a public place similar to a bar, airport, or hallway of a housing project, as the majority implies. The relevant issue in regard to the applicability of the *Terry* stop doctrine is whether Tina Ward's apartment is a public or a private place *per se*—not whether appellant had a reasonable expectation of privacy in the apartment. Because Tina Ward's apartment is a private residence, I do not believe the *Terry* stop doctrine is applicable in the present case unless the officers were lawfully on the premises.

C. Totality of the Circumstances Test

I believe the majority distorts "the totality of the circumstances" test, which the Supreme Court developed in order to determine whether or not an informant's tip provides probable cause to make a search or an arrest. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). The majority argues that under this test, the reasonable suspicion provided by an informant's tip may be corroborated by observations the police make after illegally entering a private residence. The cases upon which the majority relies do not support this argument. In *Illinois v. Gates,* 462 U.S. at 230–31, 103 S.Ct. at 2328, *McCray v. Illinois,* 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967), and *Draper v. United States,* 358 U.S. 307, 311–13, 79 S.Ct. 329, 332–33, 3 L.Ed.2d 327 (1959), the informants' tips were corroborated by observations the police made of the defendants in *public* places. In these cases, the police did not illegally enter a private residence based merely on the reasonable suspicion provid-

ed by an informant's tip and then develop corroborating evidence once inside the residence, as the majority implies.

The majority concedes that before entering the apartment, the uncorroborated informant's tip provided reasonable suspicion at best. I believe that in the circumstances of this case, the corroboration of the informant's tip had to take place prior to the officers' entry into the apartment in order to provide probable cause to enter and arrest defendant. For these reasons, I believe that appellant's arrest in Tina Ward's apartment is constitutional only if it was based on probable cause and that probable cause to arrest had to exist prior to entry into the apartment.

## II.

I will now address the issue of whether or not appellant's arrest was based on probable cause. In the present case, Inspector Hartman, based on an informant's tip stating that there was a person in apartment 104N named Bill, who was armed, dangerous, and carrying drugs, believed that he had probable cause to enter the apartment to arrest "Bill." I disagree for the following reasons.

In *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, the Supreme Court adopted a "totality-of-the-circumstances" approach to determine whether an informant's tip establishes probable cause, "whereby the informant's veracity, reliability, and basis of knowledge are highly relevant." *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 2413–14, 110 L.Ed.2d 301 (1990). In the present case, the informant's tip consisted of the bare assertion that a person named Bill was in the apartment, was armed, and had drugs. Although Inspector Hartman testified that the informant had provided reliable information in the past, there was no corroboration of the informant's tip in order to verify whether or not it was an accurate statement. Moreover, there was no indication of the informant's basis of knowledge. The officers did not know and did not ask whether this information was based on first-hand knowledge or on hear-

say, whether the informant had seen drugs or a weapon on appellant or in the apartment, or whether the informant was involved in dealing drugs or had prior drug convictions. Although Inspector Hartman vouched for the informant's reliability in the past, there was absolutely no indication how the informant gained his information about "Bill." Therefore, the informant's statement is not commensurate with the criteria usually required to establish probable cause. The mere statement by an informant, even one that has provided reliable information in the past, that someone is in an apartment with drugs and a weapon is not sufficient to constitute probable cause for an arrest without more specific corroboration of drug activity and without any indication whatsoever of the informant's basis of knowledge.

For example, in *United States v. MacDonald*, 916 F.2d 766 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991), the court held that once a police officer has first-hand knowledge of the presence of drugs and weapons in an apartment, probable cause and exigent circumstances to enter the apartment without a warrant were present. *Id.* at 770. In *MacDonald*, after an informant had alerted the New York Drug Enforcement Task Force about a possible narcotics operation in a Manhattan apartment building, the Task Force established surveillance outside the apartment building and observed numerous indications that a retail narcotics exchange was being operated. One of the agents attempted to make a buy, observed men with weapons inside the apartment, and smelled marijuana smoke when the door was opened. *Id.* at 768. The court determined that it was at this point that probable cause and exigent circumstances to enter the apartment without a warrant existed. *Id.* at 770. In contrast, in the present case, no surveillance was conducted, no one attempted to make a buy, and after Tina Ward opened her door, none of the officers observed drugs or weapons in the apartment.

In *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1508 (6th Cir.1988), this court found that probable cause existed to enter a dwelling to make a warrantless arrest based on exigent circumstances after a reliable informant furnished law enforcement officials with detailed information regarding the defendant's efforts to sell cocaine, much of that information was verified by police recordings of the informant's negotiations with the defendant in the apartment, and the informant stated that he had observed cocaine in the apartment. In contrast, in the present case, the information provided by the allegedly reliable informant was not corroborated or verified, the information was not detailed, and the informant did not state that he had seen drugs or a weapon on appellant or in the apartment.

Inspector Hartman's statement that he saw someone peering out of the window of apartment 104N is not sufficient corroboration of the informant's tip to constitute probable cause to make an arrest. Because the police, who had been at the King Kennedy Project for over half an hour, were stopping and frisking people inside the courtyard, the fact that someone was allegedly watching them out of the apartment window was not an unusual circumstance. Inspector Hartman conceded that he did not know of any circumstances indicating that the people inside the apartment were afraid for their lives, and that when he stood outside the apartment door, he heard no toilets and water flushing and no scurrying around to indicate the imminent destruction of evidence. Moreover, Inspector Hartman stated that the windows of the apartment were secured with heavy steel mesh screening and that there was no back door to the apartment. After he knocked on the door, there was no suggestion of danger to the residents within the apartment that would give probable cause to enter the apartment to make an arrest. Instead, Ms. Ward answered the door and asked if the police had a warrant. Her assertion of her Fourth Amendment right to be free of unreasonable searches and seizures does not provide probable cause to enter the apartment "to secure it." The officers did not observe any indication of drug activity once the apartment door had

been opened, but instead observed another woman sitting at the kitchen table. The majority states that appellant was seen retreating down the hallway into a rear bedroom. This is not true. The record indicates that upon entry into the apartment, the officials did not see appellant or any signs of danger or drug activity and that appellant was already located in a rear bedroom. Therefore, I believe the officers lacked probable cause to enter the apartment to make an arrest.

### III.

To conclude, I believe that at best the informant's tip provided reasonable suspicion to stop and frisk appellant McNeal if he had been in a public place. Because appellant was in a private residence, the *Terry* stop doctrine does not apply. The majority's extension of the *Terry* stop doctrine into the confines of a private residence eviscerates the probable cause requirement of the Fourth Amendment. It blurs the distinction between a *Terry* stop based on reasonable suspicion provided by an informant's tip, which is allowed in a public place, and an arrest in a private home, which must be based on probable cause to believe that a crime has been committed.

For these reasons, I would reverse the decision of the district court. Because the informant's tip did not provide probable cause to arrest appellant, the officers had no justification for conducting a pat-down search incident to arrest of his person and belongings. Therefore, the drugs, weapon, and money found on appellant's person and property were the contaminated fruit of the unlawful arrest and should not have been admitted into evidence. *See Taylor v. Alabama*, 457 U.S. 687, 694, 102 S.Ct. 2664, 2669, 73 L.Ed.2d 314 (1982); *Dunaway v. New York*, 442 U.S. 200, 218–19, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). The motion to suppress should have been granted.